TEXAS STATE BOARD OF EXAMINERS OF MARRIAGE AND FAMILY THERAPISTS; Cheryl Gomez in Her Capacity as Executive Director; Michael Puhl, in His Capacity as Presiding Officer; Texas Association for Marriage and Family Therapy, Petitioners,

v.

TEXAS MEDICAL ASSOCIATION, Respondent

No. 15–0299

Supreme Court of Texas.

Argued October 11, 2016

Opinion delivered: February 24, 2017

Charles Roy, First Assistant Attorney
General, Dustin Mark Howell, Eric Lance
Vinson, W. Kenneth Paxton Jr., Warren

Kenneth Paxton Jr., Evan S. Greene, Office of the Attorney General, Scott A. Keller, Office of the Attorney General, Solicitor General, David T. Arlington, Gavin Robert Villareal, Matthew Carlton Wood, Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, for Petitioner.

Andrea Schwab, Donald P. Wilcox, Texas Medical Association, Austin, TX, David F. Bragg, Law Offices of David F. Bragg, P.C., Bastrop, TX, for Respondent.

Justice Boyd delivered the opinion of the Court.

Over twenty years ago, the Texas State Board of Examiners of Marriage and Family Therapists (the Therapists Board) adopted a rule that permits licensed marriage and family therapists (MFTs) to provide "diagnostic assessment . . . to help individuals identify their emotional, mental, and behavioral problems." Nearly ten years ago, the Texas Medical Association filed this suit asserting that the rule is invalid because the Texas Occupations Code does not authorize MFTs to provide diagnostic assessments. The Medical Association asserts that, subject to a few exceptions that do not include MFTs, only those who are licensed to practice medicine may provide a diagnostic assessment. We conclude that the Code authorizes MFTs to provide the type of diagnostic assessment the rule permits. We reverse the court of appeals' judgment and render judgment that the rule is valid.

## I.

### Background

The Texas Licensed Marriage and Family Therapists Act (the Therapists Act) regulates the practice of marriage and family therapy in Texas. Tex. Occ. Code §§ 502.001–.455. "Marriage and family therapy" means "providing professional therapy services to individuals, families, or married couples, alone or in groups, that involve applying family systems theories and techniques." *Id.* § 502.002(6). The Therapists Act expressly provides that these professional therapy services include "the evaluation and remediation of cognitive, affective, behavioral, or relational dysfunction in the context of marriage or family systems." *Id.*

In 1994, the Therapists Board, relying on this statutory authority, adopted a rule listing specific therapeutic services that MFTs may provide. *See* 22 Tex. Admin. Code § 801.42. In addition to various types of therapies, consultations, referrals, and other services, the rule permits MFTs to provide "[d]iagnostic assessment which utilizes the knowledge organized in the Diagnostic and Statistical Manual of Mental Disorders (DSM) . . . as part of their therapeutic role to help individuals identify their emotional, mental, and behavioral problems when necessary." *Id.* § 801.42(13).[1]

The DSM, published by the American Psychiatric Association, is a comprehensive collection of information regarding a wide range of mental disorders. To promote consistency in the identification of mental disorders, the DSM provides diagnostic classifications, criteria, and descriptions of mental disorders based on the presence or absence of particular signs, symptoms, and features.[2] The DSM assigns to each mental

---

**1.** Subsection (17) of rule 801.42 similarly permits MFTs to provide *"[a]ssessment and appraisal which utilizes systems methods and processes . . . for the purposes of . . . diagnosing mental problems."* 22 Tex. Admin. Code § 801.42(17) (emphases added). The Medical

Association has not challenged this subsection of the rule.

**2.** *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 5 (5th ed., 2013) [hereinafter DSM–5] ("The

disorder a unique diagnostic code based on the diagnostic coding system adopted by the World Health Organization.[3] The Therapists Board and its supporting amici curiae[4] explain (and the Medical Association does not dispute) that the "DSM, along with the [diagnostic coding system], is the universal diagnostic system used in diagnosing mental health disorders in the United States and much of the rest of the world." Like other mental-health professionals, MFTs in Texas are trained and qualified to perform diagnostic assessment using the DSM and are tested on that ability as part of their licensing requirements.

The Therapists Board and its amici contend that the ability to provide diagnostic assessments using the DSM is essential to an MFT's practice. When necessary to assist a client, MFTs perform DSM-based diagnostic assessments to identify a client's mental disorder, develop a proper treatment plan, determine the client's eligibility for various services, consult with physicians and other health professionals about the client, provide statistical information to government health agencies and private health institutions, and obtain insurance payments for their services. According to the Board and its amici, if MFTs cannot provide a diagnostic assessment using the DSM, they simply cannot provide adequate marriage and family therapy, and Texans would lack a substantial source of mental health care at a time when the shortage of such care has reached crisis levels.

In 2008, fourteen years after the Therapists Board adopted rule 801.42(13),[5] the Medical Association filed this suit against the Board[6] seeking a declaratory judgment that the rule is invalid. The Association alleged that by permitting MFTs to provide diagnostic assessments, the rule grants MFTs authority that the Therapists

---

diagnostic criteria identify symptoms, behaviors, cognitive functions, personality traits, physical signs, syndrome combinations, and durations.").

**3.** *See generally,* World Health Organization, Classifications (last visited Feb. 16, 2017), available at http://www.who.int/classifications/icd/en/.

**4.** The Association of Marital and Family Therapy Boards and the California Association of Marriage and Family Therapists submitted amicus curiae briefs in support of the Therapists Board.

**5.** When initially adopted, the rule's introductory clause provided that its list of permissible services "are professional therapeutic services which are part of marriage and family therapy when the services involve the professional application of family systems theories and techniques in the delivery of the services." *See* 21 Tex. Reg. 3767 (1996). In 2006, the Therapists Board changed the introductory clause to provide simply that the listed services "are professional therapeutic services which may be provided by a marriage and family thera-

pist." *See* 31 Tex. Reg. 5116 (2006). The Medical Association asserts that it filed suit in 2008 because the Board's deletion of the language limiting the rule to services that "are part of marriage and family therapy" and "involve the professional application of family systems theories and techniques" appeared to expand the rule's scope. Regardless of whether the Board intended the amendment to have any substantive effect, we conclude that it is irrelevant to the Association's challenge. If, as the Association contends, a "diagnostic assessment" is necessarily the "diagnosis of a mental condition," which is beyond the scope of the Therapists Act and is the "practice of medicine," then every diagnostic assessment would constitute the practice of medicine regardless of whether it is made as "part of marriage and family therapy" or by the "professional application of family systems theories and techniques."

**6.** The Texas Association for Marriage and Family Therapy, Inc. later intervened as a defendant and is now a petitioner in this Court along with the Therapists Board. We refer to the defendant-petitioners collectively as the Therapists Board or the Board.

Act does not grant and that the Texas Medical Practice Act reserves for medical licensees.[7] The Medical Practice Act, TEX. OCC. CODE §§ 151.001–169.005, requires a license to practice medicine in Texas, *id.* § 155.001, and defines "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who ... charges money or other compensation for those services." *Id.* § 151.002(13). The Medical Association contends that, by authorizing MFTs to make a "diagnostic assessment" using the DSM, the rule permits MFTs to practice medicine without a license by making a "diagnosis [of] ... a mental ... disease or disorder."[8]

In response, the Therapists Board and its amici do not assert that their practice requires or that the rule permits them to provide diagnostic assessments of every kind of mental disorder. They concede that the rule does not permit them to provide a "medical" diagnosis or any diagnosis that requires them to act beyond their area of expertise and level of training. But they contend that both the Therapists Act and the rule authorize them to

diagnose some "nonmedical" disorders like relational dysfunction, adjustment disorder, mood disorder, anxiety disorder, behavioral dysfunction, sexual dysfunction, anorexia, depression, conduct disorder, personality disorder, and addiction, which are DSM diagnoses that relate to conditions often caused not by medical issues but by psychological and social experiences like sexual abuse, physical abuse, trauma, domestic violence, physical illness, and loss.

In the trial court, the parties filed cross-motions for summary judgment on the Medical Association's declaratory-judgment claim. The court granted the Association's motion, denied the Board's motion, and entered judgment declaring the diagnostic-assessment rule invalid because it "exceeds the scope" of the Therapists Act. The court of appeals affirmed. 458 S.W.3d 552, 560 (Tex.App.–Austin 2014).

## II.

### Validity of the Diagnostic–Assessment Rule

In defense of the diagnostic-assessment rule, the Therapists Board and its amici note that the DSM itself permits MFTs to

---

**7.** The Medical Association also challenged the validity of a Therapists Board rule requiring MFTs to "base all services on an assessment, evaluation, or diagnosis of the client." *See* 22 TEX. ADMIN. CODE § 801.44(s). The trial court upheld that rule, the court of appeals affirmed, and the Association does not seek review of that ruling in this Court. Pleading alternatively, the Association alleged that, if the Therapists Act authorizes MFTs to provide diagnostic assessments as rule 801.42(13) permits, then the Act itself is unconstitutional under article 16, section 31 of the Texas Constitution. *See* TEX. CONST art. 16, § 31 ("The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine."). The trial

court and the court of appeals invalidated the rule on statutory grounds without reaching the constitutional challenge. Here, the Association asserts only in passing that any holding that results in a conflict between the Therapists Act and the Medical Practice Act "would raise serious questions about the constitutionality" of the Therapists Act. Because the Association does not brief any constitutional arguments, we do not address them.

**8.** The Texas Medical Practice Act charges the Texas Medical Board with regulating persons "licensed to practice medicine in this state," TEX. OCC. CODE §§ 151.003, 152.001(a), but the Medical Board has declined to join the Medical Association's challenge in this case.

make DSM diagnoses, and that the DSM "has been—and is intended to be—used by" MFTs as well as a "wide variety" of other mental-health professionals besides physicians.[9] In fact, the American Psychiatric Association (which publishes the DSM) has said that MFTs are "able to independently make DSM diagnoses without supervision," and even invited MFTs to participate in field-testing the DSM's latest revision.[10] As a result, no other state "expressly prohibits Licensed MFTs from diagnosing mental and behavioral disorders," and the court of appeals' decision here "makes Texas the only state to prohibit Licensed MFTs from performing an integral part of their profession that is essential to their ability to properly treat their clients." The Therapists Board argues that it "would be absurd to deprive MFTs of the right to use the very manual that the American Psychiatric Association (an organization of physicians) entrusted them to help prepare."

 Accepting all of that as true, however, we must decide this case based on the relevant Texas statutes, not on whether MFTs are qualified to make DSM diagnoses or whether the DSM or other states' laws allow them to. As a state administrative agency, the Therapists Board has only those powers that the Texas Legislature has expressly conferred upon it and those implied powers that are reasonably necessary to carry out its statutory duties. *Public Util. Comm'n of Tex. v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315

(Tex. 2001). As such, it can adopt "only such rules as are authorized by and consistent with its statutory authority." *R.R. Com'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992) (quoting *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 798 (Tex. App.–Austin 1982, writ ref'd n.r.e.)). Courts generally presume that agency rules are valid, so parties who challenge a rule have the burden of proving its invalidity. *See Harlingen Family Dentistry, P.C. v. Tex. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 481 (Tex. App.–Austin 2014, pet. dism'd).

 To meet its burden, the challenging party must show that the rule's provisions are not "in harmony with the general objectives of the act involved." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995) (citing *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968)). We discern those "general objectives" from the plain text of the statutes that grant or limit the agency's authority. *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 454 (Tex. 2008); *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Generally then, the objecting party must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Moers v. Harris Cty. Appraisal Dist.*, 469 S.W.3d 655, 664 (Tex. App.–

---

9. The DSM itself notes that it is "used by clinicians and researchers of many different orientations (e.g., biological, psychodynamic, cognitive, behavioral, interpersonal, family/systems). It is used by psychiatrists, other physicians, psychologists, social workers, nurses, occupational and rehabilitation therapists, counselors, and other health and mental health professionals." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF

MENTAL DISORDERS xv (4th ed., 2000) [hereinafter DSM–IV].

10. *See* DSM–5 at 911–16 (including licensed marriage and family therapists in the DSM–5 field trials); *see also* DSM–IV at 872 (noting that the American Psychiatric Association Task Force invited the American Association for Marriage and Family Therapy to ensure that its views were represented in the DSM–IV).

Houston [1st Dist.] 2015, pet. denied); *see also City of Corpus Christi v. Public Util. Comm'n,* 51 S.W.3d 231, 236 (Tex. 2001); *Public Util. Comm'n v. Gulf States Util. Co.,* 809 S.W.2d 201, 207 (Tex. 1991).

Applying the relevant Texas statutes here, we conclude that the rule is valid because (A) the Therapists Act authorizes MFTs to provide diagnostic assessments using the DSM as the rule describes, and (B) the Medical Practice Act does not negate that authorization.

## A. The Therapists Act

We begin by determining whether the Therapists Act authorizes the diagnostic-assessment rule. As noted, the Therapists Act authorizes MFTs to engage in "the evaluation and remediation of cognitive, affective, behavioral, or relational dysfunction in the context of marriage or family systems." TEX. OCC. CODE § 502.002(6). The rule, in turn, authorizes MFTs to provide a "[d]iagnostic assessment which utilizes [the DSM] as part of their therapeutic role to help individuals identify their emotional, mental, and behavioral problems when necessary." 22 TEX. ADMIN. CODE § 801.42(13). We conclude that the Therapists Act authorizes the diagnostic-assessment rule.

### 1. Evaluations and Diagnoses

The Medical Association does not dispute that, by authorizing MFTs to provide an "evaluation," the Therapists Act permits MFTs to make "assessments." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 131 (2002) [hereinafter WEBSTER'S] (defining "assessment" as "an appraisal or evaluation"). In fact, the Association's counsel confirmed at oral argument that the Association "would be fine" if the Therapists Board would simply amend the rule to delete the word "diagnostic" and instead provide that MFTs can make "assessments using the DSM ...." But by referring to a "*diagnostic* assessment," the Association contends, the rule authorizes more than the "evaluation and remediation" that the Therapists Act permits. In response, the Therapists Board asserts that deleting the word "diagnostic" would not resolve the parties' real dispute because the rule authorizes "assessments" using the DSM—the "D" standing for "diagnostic"—so DSM assessments are necessarily "diagnostic" assessments, at least as the DSM uses that term.[11]

Because the statute and the rule do not define these key terms, we must apply their common, ordinary meaning unless a contrary meaning is apparent from the statute's language.[12] *Univ. of Tex. at*

---

11. The DSM's stated purpose is "to assist trained clinicians in the diagnosis of their patients' mental disorders as part of a case formulation assessment that leads to a fully informed treatment plan for each individual." DSM–5 at 19. According to the DSM, a diagnosis is an integral part of an evaluation. DSM–IV at xxv ("Making a DSM–IV diagnosis is only the first step in a comprehensive evaluation. To formulate an adequate treatment plan, the clinician will inevitably require considerable additional information about the person being evaluated beyond that required to make a DSM–IV diagnosis."); *see also* DSM–5 at 5 ("Reliable diagnoses are essential for guiding treatment recommendations ...."). Diagnoses "help clinicians to determine prognosis, treatment plans, and potential treatment outcomes for their patients." DSM–5 at 20; *see also* DSM–5 at 22 (equating a "principal diagnosis" with the "reason for the visit" to the clinician); DSM–IV at 3 (same).

12. The Medical Association contends that certain terms carry special or unique definitions in the Occupations Code. The Association argues both that the undisputed definition of "diagnose" is the "commonly accepted" definition as appears in Webster's Dictionary and that "the medical definition of diagnosis" is the applicable definition here. It does not explain the difference between the two definitions, but it

*Arlington v. Williams*, 459 S.W.3d 48, 52 (Tex. 2015). To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities. *See Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011) ("[W]e consult dictionaries to discern the natural meaning of a common-usage term not defined by contract, statute, or regulation.").[13]

The common, ordinary meaning of the Therapists Act's term "evaluate" is "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of" something. WEBSTER's at 786. The term "remediation" refers to "the act or process of remedying," and a "remedy" is "something that relieves or cures a disease." *Id.* at 1920; *see* STEDMAN's MEDICAL DICTIONARY 1219 (1982) [hereinafter STED-

MAN'S] (defining "remedy" as an "agent that cures disease or alleviates its symptoms"). "Diagnostic" means "adapted to or used for the furthering of diagnosis" or "serving to distinguish, identify, or determine." WEBSTER's at 622.[14] To "diagnose" means "to identify (as a disease or condition) by symptoms or distinguishing characteristics." *Id.*; *see also* STEDMAN's at 388 (defining "diagnose" as "to determine the nature of a disease"); MOSBY's MEDICAL DICTIONARY 546 (8th ed. 2009) (defining "diagnose" to mean "identification of a disease or condition by scientific evaluation of physical signs, symptoms, history, laboratory test results, and procedures").

Relying on these definitions, the Therapists Board argues that the terms "evaluate," "assess," and "diagnose" essentially have the same meaning in this statutory

---

implies that the medical definition *always* refers to diseases whereas the common definition only sometimes does. *See, e.g.,* RICHARD SLOANE, THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 199 (1987) (defining "diagnosis" as "the art of distinguishing one disease from another" and "the determination of the nature of a case of disease"). The statutory definition of the practice of medicine, however, itself refers to diagnosis as involving a disease *or* a disorder. TEX. OCC. CODE § 151.002 (a)(13).

At oral argument, the Medical Association also argued that the term diagnosis has a "meaning unique to the code." But the Medical Association does not explain what the "unique" meaning of diagnosis is in the Occupations Code. We note that the Code uses the terms "medical diagnosis" and "working diagnosis," neither of which the Code defines, but they are presumably different from each other. *Id.* §§ 204.202; 301.002(2), (5).

13. *See also, e.g., Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013) (relying on dictionary definitions, our prior decisions, the rules of procedure, and statutory definitions for the common meaning of "party"); *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) (relying on dictionary definitions and treatises for

the common meaning of "agreement"); *Morton v. Nguyen*, 412 S.W.3d 506, 510–12 (Tex. 2013) (relying on our prior decisions, dictionary definitions, and the Restatement for the common meanings of "rescission" and "refund"); *City of Houston v. Bates*, 406 S.W.3d 539, 545–47 (Tex.2013) (relying on dictionary definitions and a city ordinance for the common meanings of "leave" and "salary"); *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 181 (Tex. 2013) (per curiam) (relying on dictionary definition of "novelty"); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 n. 16 (Tex. 2012) (relying on dictionary definitions and our prior opinions for the common meaning of "requisite"); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012) (relying on our prior opinions, other statutes, and treatises for the common meaning of "property"); *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) (relying on dictionary definition for common meanings of "distribution" and "transmission").

14. *See also* DORLAND's ILLUSTRATED MEDICAL DICTIONARY 514 (31st ed., 2007) (defining "diagnostic" as "distinctive of or serving as a criterion of a disease, as signs and symptoms"); STEDMAN's at 389 (defining "diagnostic" as "[r]elating to or aiding in diagnosis").

context. An assessment is an evaluation, the Board contends, and an evaluation is simply a broader term that *includes* the making of a diagnosis. Because the Therapists Act uses the broader term to authorize MFTs to evaluate dysfunctions, it permits MFTs to make a diagnosis, which is necessarily an evaluation. In other words, the Board contends that the Therapists Act authorizes MFTs to provide a diagnostic assessment because a diagnostic assessment is merely a type of assessment, and since the MFT Act broadly authorizes assessments by authorizing evaluations, it allows all types of assessments, including a diagnosis.

In response, the Medical Association contends that, unlike an evaluation or assessment, a diagnosis involves the specific act of "identifying" or naming a condition as a specific disease or disorder. Noting that no commonly accepted definition of evaluation includes the "identification" of diseases, the Association argues that an evaluation or assessment "may be part of the process of arriving at a diagnosis, but the terms are not synonymous and the term evaluation does not include diagnosis." In support, the Association notes that even the Therapists Board has acknowledged that the terms are not synonymous by adopting a rule that requires MFTs to "base all services on an assessment, evaluation, *or* diagnosis of the client." 22 TEX. ADMIN. CODE § 801.44(s) (emphasis added). By authorizing MFTs to evaluate—but not diagnose—conditions, the Association contends, the Therapists Act excludes diagnosing from the practice of marriage and family therapy.

We agree with the Medical Association that the term diagnose typically involves the identification or naming of a condition, but we disagree with its narrow construction of the term evaluate in this context. To evaluate includes not only to assess the value, amount, or quality of a thing, but also to "judge" the thing's significance, quality, or condition. WEBSTER'S at 786 (defining "evaluate" to mean "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of" something); *see also* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 502 (5th ed. 2016) (defining "evaluate" to mean "to judge or determine the worth or quality of; appraise"). To evaluate, in other words, means not merely to inspect, examine, or review, but also to make a determination regarding that which is inspected, examined, or reviewed. Within the context of marriage and family therapy, to judge or to find the nature of a dysfunction is to identify the dysfunction so that it can be properly treated. A therapist who merely examines, assesses, or reviews a client's condition without making a determination regarding the nature of that condition cannot adequately "remediate" the condition as the Therapists Act requires. And the determination regarding the nature of a dysfunction is commonly known as a diagnosis.

The Medical Association contends that within the context of the Occupations Code the term "diagnosis" refers to a service that is necessarily distinct from an "evaluation." In support, the Association notes that several of the Code's provisions refer to the two terms separately and often in the disjunctive. *See, e.g.*, TEX. OCC. CODE §§ 159.002(b) (referring to a "record of the identity, diagnosis, evaluation, or treatment of a patient"); .004(7) (referring to "the diagnosis, evaluation, or treatment of the patient"); 162.102(b)(2) (referring to "patient evaluation, diagnosis, counseling, and preparation"); 201.402(b) (referring to "the identity, diagnosis, evaluation, or treatment of a patient").

Other Code provisions, however, refer to the terms in a manner that demonstrates

that an evaluation necessarily includes a diagnosis or identification of the thing being evaluated. For example, the Code provides that chiropractic practice includes the use of "objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body," without using the term diagnosis. *Id.* § 201.002(b)(1). But it then provides that a chiropractic patient's records include records "of the identity, diagnosis, evaluation, or treatment of a patient *by a chiropractor.*" *Id.* § 201.402(b) (emphasis added); *see also id.* § 201.405(a) (providing that "chiropractic records" means "any record relating to the history, diagnosis, treatment, or prognosis of a patient"). These provisions indicate that the chiropractor's authority to "analyze, examine, or evaluate" the patient includes the authority to diagnose the patient, such that the patient's records include records of the "diagnosis ... of a patient by a chiropractor." [15]

■ We thus conclude that the term evaluate, as used in the Therapists Act, encompasses an assessment that includes the determination or identification of the dysfunction to be treated. So with regard to the rule at issue, we conclude that the Medical Association makes too much of the rule's use of the word "diagnostic." *See Nat'l Fed'n of Fed. Emps., Local 1309 v. Dep't of Interior,* 526 U.S. 86, 93–94, 119 S.Ct. 1003, 143 L.Ed.2d 171 (1999) ("[T]hese linguistic arguments ... make too much of too little."). The rule uses the term "diagnostic" as an adjective within the phrase "diagnostic assessment." An adjective either describes a noun or limits it. *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 202–03 (3rd ed., 2013); *see also* THE CHICAGO MANUAL OF STYLE 165 (15th ed., 2003) ("An adjective is a word that adds a new idea to a noun or pronoun either by describing it more fully (a descriptive adjective) or by narrowing a noun's or pronoun's meaning (a limiting adjective)."). The rule thus uses the term "diagnostic" to either limit or more fully describe the type of assessments that MFTs can make.

■ In either case, "diagnostic assessment" is not broader than "assessment," and thus is not broader than the "evaluation" the Therapists Act authorizes. *See Jaster v. Comet II Const., Inc.,* 438 S.W.3d 556, 566 (Tex. 2014) (plurality op.) (stating

---

**15.** Other Code provisions also indicate that an "evaluation" includes the identification of disorders or problems discovered through the evaluation. *See id.* § 151.002(a)(7) (providing that "Medical peer review" includes the "evaluation of the qualifications and professional conduct of professional health care practitioners"); 205.001(2) (providing that "acupuncture" refers to specific types of "therapy to treat and mitigate a human condition, including evaluation and assessment of the condition"); 401.001(6) (" 'Speech-language pathology' means the application of nonmedical principles, methods, and procedures for measurement, testing, evaluation, prediction, counseling, habilitation, rehabilitation, or instruction related to the development and disorders of communication ... for the purpose of evaluating, preventing, or modifying ... those disorders and conditions

...."); 501.003(c) (providing that the practice of psychology includes "evaluating, preventing, and remediating psychological, emotional, mental, interpersonal, learning, and behavioral disorders ... as well as the psychological disorders that accompany medical problems, organizational structures, stress, and health" along with "evaluating and treating mental or emotional disorders and disabilities by psychological techniques and procedures"). Although we need not and do not address whether these provisions authorize a "diagnosis" in any sense that causes the Medical Association's concerns in this case, we note them to demonstrate the Code's general recognition that those charged with the responsibility of evaluating and remediating a particular condition or problem must be able to identify the condition to know what it is they must address.

that to conclude that terms are meant to have a broader use, the context must demonstrate an intent for the broader definition); *see also In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009) ("[I]f a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning."). MFTs, who are authorized to make assessments in the broad sense of the word, are not prohibited from making a certain subtype of those assessments. Considering the common, ordinary meanings of the terms within their statutory context, we conclude that by authorizing MFTs to "evaluate and remediate" their clients' dysfunctions, the Therapists Act authorizes MFTs to provide a "diagnostic assessment" as the Therapists Board's rule uses that phrase.

**2. Diseases, disorders, and dysfunctions**

■ The Medical Association argues that, because the term diagnosis means the identification of a disease or disorder, the Therapists Act cannot be construed to authorize diagnosing under the DSM because it only authorizes the evaluation of a "dysfunction." According to the Association, a dysfunction is a symptom, not a disease or disorder that causes a dysfunction. Thus, even if the Therapists Act authorizes MFTs to identify or determine a "dysfunction in the context of marriage or family systems," TEX. OCC. CODE § 502.002(6), it does not authorize them to identify a mental disorder under the DSM.

We are not convinced. Based on their common, ordinary, and even medical meanings, diseases and disorders are merely types of dysfunctions. *See* MOSBY'S MEDICAL DICTIONARY (8th ed. 2009) (defin-

ing "disease" as "a condition of abnormal vital function involving any structure, part, or system of an organism"); THE AMERICAN HERITAGE MEDICAL DICTIONARY (2007) (defining "disorder" as a "disturbance or derangement that affect the function of mind or body"). "Disease" and "disorder" are often interchangeable, *see* WEBSTER'S at 648 (defining disease to include a "disorder or derangement (as of the mind)"); STEDMAN'S at 403 (defining "disease" to include a "disorder of bodily functions, systems, or organs"), and a disorder—a "derangement of function," WEBSTER'S at 652—is a type of dysfunction, *id.* at 711 (defining dysfunction as "impaired or abnormal functioning (as of an organ of the body)" or "a nonadaptive trait or condition").[16] We cannot discern any distinction between the terms that provides a relevant difference here.

**3. Limitations on MFT assessments**

Noting that perceived symptoms of mental disorders may instead be symptoms of a physical disorder, the Association suggests that we cannot construe the Therapists Act to authorize MFTs to diagnose mental disorders because any mental disorder that has a "medical component" is beyond MFTs' expertise and outside of their authorized practice. But the Therapists Board does not contend—and we do not conclude—that the Therapists Act authorizes MFTs to diagnose all human dysfunctions. Under the Act, an MFT's services—including any evaluation—must "involve applying family systems theories and techniques" and be made "in the context of marriage or family systems." TEX. OCC. CODE § 502.002(6).

■ The Medical Association argues, however, that the rule at issue is invalid

---

**16.** Like these dictionary definitions, the DSM–IV also defines mental disorders as types of dysfunctions. *See* DSM–5 at 20 (defining mental disorder as "a syndrome ... that reflects a dysfunction in the psychological, biological, or developmental processes underlying mental functioning"); DSM–IV at xxi-xxii (defining mental disorder to include "a manifestation of a behavioral, psychological, or biological dysfunction").

because it does not reflect the Therapists Act's limitations and instead permits MFTs to diagnose "any and all mental disorders." But the rule itself specifically states that MFTs may only make diagnostic assessments "as part of their therapeutic role to help individuals identify their emotional, mental, and behavioral problems when necessary." 22 TEX. ADMIN. CODE § 801.42(13). Another Therapists Board rule explicitly limits an MFT to services "within his or her professional competency." *Id.* § 801.44(r).[17] And when the limits of an MFT's competency are reached, the rules require the MFT to consult with and refer clients to other providers for appropriate care. *Id.* §§ 801.42(12), .44(p), (t). Thus, as the Therapists Board itself agrees, the rule does not authorize MFTs to diagnose the "full panoply" of DSM disorders. We conclude that the Therapists Act authorizes MFTs to provide diagnostic assessments as the Therapists Board's rule 801.42(13) permits.

## B. The Medical Practice Act

The Medical Association asserts that we cannot construe the Therapists Act to permit any diagnostic assessments because doing so would create an impermissible conflict between the Therapists Act and the Medical Practice Act, which defines the practice of medicine as including the diagnosis of medical disorders and prohibits practicing medicine without a medical license. *See* TEX. OCC. CODE §§ 155.001, 151.002(a)(13). As "a matter of public policy," the Medical Practice Act protects the public interest by recognizing that "the practice of medicine is a privilege and not a natural right," and it is necessary to "regulate the granting of that privilege and its subsequent use and control." *Id.* § 151.003(1). The Medical Association argues that construing the Therapists Act to permit MFTs to diagnose mental disorders—and thus engage in the practice of medicine—undermines this important policy concern and threatens the public interest.

As the Medical Association acknowledges, the Occupations Code expressly permits some healthcare professionals who do not have a medical license to make particular types of diagnoses.[18] And the Code also expressly exempts certain health

---

**17.** The Medical Association points to the DSM's multiaxial system for categorizing mental disorders, which includes an axis for physical illnesses. We first note that the DSM itself claims that a diagnosis does not necessarily require "that there be knowledge about its etiology." DSM–IV at xxiii. The DSM–IV explained that it is, and is intended to be, "used by clinicians and researchers of many different orientations (e.g., biological, psychodynamic, cognitive, behavioral, interpersonal, family/systems)." *Id.* at xv. Further, the DSM also cautions: "Despite widespread use and its adoption by certain insurance and governmental agencies, the multiaxial system in the DSM–IV was not required to make a mental disorder diagnosis." DSM–5 at 16. In fact, the DSM–5 abandoned the multiaxial system precisely because of this confusion. *Id.*

**18.** *See id.* §§ 204.202(b)(3) (permitting physician assistants to "formulat[e] a working diagnosis"); 251.003(a)(2)(c) (defining the practice of dentistry to include the authority to "diagnosis . . . a disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, oral cavity, alveolar process, gums, or jaws"); 351.002(6)(B), 7(B) (defining the practice of optometry to include the authority to "examine or diagnose visual defects, abnormal conditions, or diseases of the human eye or adnexa"); .355(1) (permitting optometrists to "examine the eye to diagnose the presence of a defect or abnormal condition" that can be remedied by the use of lenses); .358(b)(1) (permitting a therapeutic optometrist to diagnose visual defects, abnormal conditions, or diseases of the human vision system); 505.0025(b) (permitting licensed social workers to use the DSM "and other diagnostic classification systems in assessment, diagnosis, treatment, and other activities"); 801.002(5) (authoriz-

professions from its requirements altogether.[19] The Association contends, however, that if the Legislature had intended to permit MFTs to diagnose or provide diagnostic assessments of certain mental disorders or to exempt them from the Medical Practice Act's requirements, it would have done so expressly as it did in these provisions. *See, e.g., PPG Indus., Inc. v. JMB/ Hous. Ctrs. Partners, L.P.*, 146 S.W.3d 79 (Tex. 2004). Instead, the Association argues, by authorizing MFTs to provide evaluations instead of diagnoses, the Therapists Act demonstrates that MFTs are not authorized to diagnose, and construing "evaluate" to mean "diagnose" creates an impermissible conflict between the two acts.

In principle, as a matter of statutory construction, this argument bears significant merit. But within the context of the Occupation Code's various provisions and diverse uses of the terms at issue, we are ultimately not persuaded. As the Therapists Board notes, several other Code provisions expressly *prohibit* certain professionals from "diagnosing."[20] Relying on the same principle, the Therapists Board argues that, if the Legislature had intended to prohibit MFTs from diagnosing or providing a diagnostic assessment, it would have done so expressly as it did in these provisions. Instead, the Board contends,

by providing that MFTs can perform an evaluation without expressly prohibiting them from providing a diagnosis as in these other provisions, the Therapists Act demonstrates that MFTs are authorized to diagnose as part of an evaluation.

█ In light of these inconsistencies throughout the Occupations Code, we return to the Therapists Act's plain language. Having concluded based on that language, as construed within its context, that the Therapists Act authorizes MFTs to provide a diagnostic assessment as the rule allows, we conclude that the Therapists Act provides a limited exception to the Medical Practice Act's prohibitions. In light of that exception, the Acts do not conflict as the Medical Association contends.

## C. Construction Canons

Finally, the Therapists Board argues that, to the extent the Therapists Act and the Medical Practice Act conflict, the Therapists Act controls because it was enacted later and is more specific than the Medical Practice Act. *See* TEX. GOV'T CODE §§ 311.025(a) ("[I]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."); 311.026(b); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex.

---

ing veterinarians to diagnose diseases and medical conditions in non-human animals).

**19.** *Id.* § 151.052 (exempting dentists, optometrist, chiropractors, nurses, podiatrists, psychologists, and physical therapists).

**20.** *See id.* §§ 262.151(a)(3)(A) (providing that a dental hygienists may not "diagnose a dental disease or ailment"); 301.002(2) (providing that professional nursing "does not include acts of medical diagnosis"); .002(5) (providing that vocational nursing "does not include acts of medical diagnosis"); 453.006(a) (providing that physical therapists "may not engage in diagnosing diseases or in

practicing medicine"); 454.006(c) (providing that occupational therapy "does not include diagnosis"); 455.002(b)(1) (providing that massage therapy does not include "the diagnosis or treatment of illness or disease"); 503.003(b) (defining practice of professional counseling and providing that in that section the term "assessment" "does not permit or include the diagnosis or treatment of a physical condition or disorder"); 554.052 (providing that a physician's order or protocol may permit a pharmacist to administer an immunization or vaccination but "may not permit delegation of medical diagnosis").

2010). Moreover, the Board asserts that, as the agency charged with its enforcement, we should defer to its construction of the Therapists Act. *See R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 632 (Tex. 2011) ("[A]n agency's longstanding construction of a statute, especially in light of subsequent legislative amendments, is particularly worthy of [courts'] deference.").

In response, the Medical Association asserts that the Therapists Act cannot prevail over any conflict with the Medical Practice Act because amendment or repeal by implication are not favored doctrines. *See, e.g., United States v. Fed. Deposit Ins. Corp.*, 560 S.W.2d 119, 121 (Tex. Civ. App.–Houston [1st Dist.] 1977, writ ref'd n.r.e.) Instead, the Association contends, we must harmonize the two Acts to give effect to both, and—as the court of appeals concluded—the only way to harmonize them is to conclude that the Therapists Act authorizes evaluations other than the diagnosis of a mental condition.

■ We need not and will not address these construction canons unless we conclude that the statutes' language is ambiguous. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) (explaining that the Court will not defer to agency interpretations if the statutory language is unambiguous). A statute is ambiguous if its words are susceptible to two or more reasonable interpretations, and we "cannot discern legislative intent in the language of the statute itself." *DeQueen*, 325 S.W.3d at 639 (refusing to rely on construction canons because statute's unambiguous language resolved any apparent conflict). We conclude that, in light of the common, ordinary meanings of the terms at issue and the statutory context in which they are used, the Medical Association's interpretation of the Therapists Act is not reasonable and the Act is not ambiguous.

As a result, we need not address the Therapists Board's reliance on the construction canons.

In short, nothing in the rule's use of the term "diagnostic assessment" compels the conclusion that it refers to diagnosing of physical or mental diseases or disorders in a manner that constitutes the practice of medicine. This is especially true within the context of the Therapists Act and the restrictions the rule places on the practice of marriage and family therapy. Presuming, as we must, that the Therapists Board acted within its authority when it issued the diagnostic-assessment rule, we cannot say that the Medical Association established that the rule is invalid.

### III.

### Conclusion

This case has required us to carefully evaluate the Therapists Board's diagnostic-assessment rule in light of the language of the Therapists Act and the Medical Practice Act. As is true with MFTs and the services they provide, our careful evaluation would be for naught if we merely reviewed and assessed the rule and statutes yet failed to identify our findings and conclusions. Completing our evaluation of the statutes' relevant language, we conclude that every act that a physician may do is not automatically the unlawful practice of medicine when done by a non-physician, and terminology in one field may overlap with that of another. That the diagnosis of physical and mental diseases and disorders lies within the province of physicians does not preclude MFTs from making diagnostic assessments of emotional, mental, and behavioral problems as part of their efforts to evaluate and remediate mental dysfunctions within the marriage and family setting. Although MFTs' authority to provide a diagnostic assess-

ment is subject to real and meaningful limitations, we conclude that the Therapists Act authorizes the diagnostic-assessment rule and the Medical Practice Act does not prohibit it. Our diagnosis is that the diagnostic-assessment rule is valid. We therefore reverse the court of appeals' judgment declaring the rule invalid and render judgment accordingly.