

February 26, 2025

The Honorable Brian Birdwell
Chair, Senate Committee on Natural Resources
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

**Opinion No. KP-0484**

Re: Authority of the Texas Ethics Commission to toll its obligation under Government Code § 571.1242(g) in circumstances beyond litigation (RQ-0568-KP)

Dear Senator Birdwell:

You ask whether the Texas Ethics Commission may "by rule, toll its obligation under Government Code [subsection] 571.1242(g) in any circumstance other than litigation."[1] You do not, however, reference or ask us to determine the procedural validity of any specific rules. *See* Request Letter at 1. We thus limit our analysis accordingly.

**Chapter 571 of the Texas Government Code governs the Commission's responsibilities and rulemaking authority.**

The Commission is a constitutionally created "state agency." TEX. CONST. art. III, § 24a(a). Relevant here, the Commission's powers extend only to those that the "Texas Legislature has expressly conferred upon it and those implied powers that are reasonably necessary to carry out its statutory duties." *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). An agency cannot "exercise what is effectively a new power, or a power contradictory to the statute, on the theory that such a power is expedient for administrative purposes." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). It follows that the Commission's exercise of rulemaking authority must be "in harmony with the general objectives of the act involved" as discerned from the "plain text of the statutes that grant or limit the agency's authority." *Marriage & Fam. Therapists*, 511 S.W.3d at 33 (citation omitted). But there is no such harmony if a rule: "(1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional

---

[1] Letter from Hon. Brian Birdwell, Chair, S. Comm. on Nat. Res. & Econ. Dev., to Hon. Ken Paxton, Tex. Att'y Gen. at 1 (Oct. 30, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0568KP.pdf ("Request Letter").

burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.*

Here, Chapter 571 of the Texas Government Code generally directs the Commission to "administer and enforce" various aspects of the Government Code, Local Government Code, and Election Code, TEX. GOV'T CODE § 571.061(a), and details a complaint process for alleged violations under that rubric, *id.* §§ 571.121–.142. This framework governs everything from receiving and processing complaints to the conduct of preliminary reviews, preliminary review hearings, and formal hearings. *Id.* §§ 571.122–.132. With that in mind, the Commission is expressly empowered to "adopt rules to administer" Chapter 571 or "any other law administered and enforced by the [C]ommission." *Id.* § 571.062(a).

The complaint process begins upon the filing of a sworn complaint or on a motion "adopted by an affirmative vote of at least six [C]ommission members."[2] *Id.* §§ 571.122(a), .124(b); *see also id.* § 571.124(a) (explaining that a sworn third-party complaint must comply with form requirements to be subject to preliminary review). The Commission must then "send written notice to the complainant and the respondent,"[3] *id.* § 571.123(b), and the respondent's timeline for responding to that notice depends on the classification of an alleged violation, *id.* § 571.1242(a)–(b); *see also id.* § 571.1211(2)–(3) (defining violation types). During preliminary review, the Commission's staff may submit "written questions" to the complainant or respondent and subpoena documents and witnesses if certain requirements are met. *Id.* §§ 571.1242(f), .137(a-1).

Subsection 571.1242(g) directs that "[n]ot later than the 120th day after the later of the date the [C]ommission receives a respondent's response to notice . . . or the respondent's response to written questions," the Commission must "propose an agreement to the respondent to settle the complaint without holding a preliminary hearing" or "dismiss the complaint."[4] *Id.* § 571.1242(g). Subsection 571.1242(h) further explains that this deadline is "tolled for the duration of any litigation brought by the respondent or the [C]ommission regarding the complaint at issue." *Id.* § 571.1242(h).

Only one other provision expressly references tolling—specifically, the tolling of preliminary review deadlines. *See id.* § 571.1244 ("Preliminary Review and Preliminary Review Procedures"). Section 571.1244 requires the Commission to "adopt procedures for the conduct of

---

[2] A preliminary review initiated on motion of the Commission itself is deemed "a complaint for purposes of all further proceedings under [C]hapter 571 of the Government Code." 1 TEX. ADMIN. CODE § 12.15(b).

[3] A "respondent" is "a person who is alleged to have committed a violation of a rule adopted by or a law administered and enforced by the [C]ommission." TEX. GOV'T CODE § 571.002(4).

[4] We are aware of bills pending before the Eighty-ninth Legislature that would amend or implicate various provisions in Chapter 571 as well as the laws the Commission administers and enforces. *See, e.g.*, Tex. H.B. 1034, 89th Leg., R.S. (2025); Tex. H.B. 755, 89th Leg., R.S. (2025). One bill, for example, reduces the time period and removes a triggering event for subsection 571.1242(g)'s deadline. *See* Tex. S.B. 139, 89th Leg., R.S. (2025). But none of these bills, as filed, change our analysis of the Commission's tolling authority.

preliminary reviews and preliminary review hearings." *Id.* These procedures must provide for "tolling or extension of otherwise applicable deadlines" in two scenarios:

> (A) [when] the [C]ommission issues a subpoena and the [C]ommission's meeting schedule makes it impossible both to provide a reasonable time for response and to comply with the otherwise applicable deadlines; or
>
> (B) [when] the [C]ommission determines that, despite [C]ommission staff's diligence and the reasonable cooperation of the respondent, a matter is too complex to resolve within the otherwise applicable deadlines without compromising either the [C]ommission staff's investigation or the rights of the respondent.

*Id.* § 571.1244(2).

**A rule that purports to "toll" the Commission's 120-day jurisdictional mandate for reasons beyond litigation would conflict with the plain text of this statutory framework and run counter to the general objectives of the same.**

Whether the Commission may toll the 120-day deadline for reasons beyond litigation reduces principally to a question of statutory interpretation. We therefore "start with [Chapter 571's] text and the plain meaning of its words construed within the statute as a whole." *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020). In doing so, we presume the Legislature chose the statutory language "deliberately and purposefully" and read the greater statutory framework so that no part is "inconsistent, superfluous, or devoid of meaning." *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014)); *see also, e.g.*, *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (orig. proceeding) (explaining when two provisions overlap, we should "[t]o the extent possible[] . . . construe the[m] . . . in a way that harmonizes rather than conflicts"). Moreover, when terms are undefined, we presume the Legislature "meant to use the ordinary meaning of a word, with each term 'interpreted consistently in every part of [the] act.'" *Sunstate Equip. Co.*, 601 S.W.3d at 690 (alteration in original) (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)).

The Commission possesses general rulemaking authority to "adopt rules to administer" Chapter 571. TEX. GOV'T CODE § 571.062(a). The term "administer" ordinarily refers to actions taken "to manage or supervise the execution, use, or conduct." *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 15 (10th ed. 1993); *see also, e.g.*, BLACK'S LAW DICTIONARY 44 (Deluxe 6th ed. 1990) (defining "administer" as "[t]o manage or conduct"). This is consistent with the Government Code's limited directive that the Commission exercise its rulemaking authority to promulgate "procedures *for the conduct of* preliminary reviews and preliminary review hearings," TEX. GOV'T CODE § 571.1244 (emphasis added), which "must include" procedures related to "tolling or extension of otherwise applicable deadlines" in two limited circumstances, *id.* § 571.1244(2). Indeed, the root term "procedure" is commonly understood to involve the "manner

of proceeding" or "a way of performing or effecting something." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1110 (4th ed. 2002); *see also, e.g.*, BLACK'S LAW DICTIONARY 1221 (7th ed. 1999) (defining "procedure" to mean "[a] specific method or course of action"). Subsection 571.1244(2) therefore speaks to the Commission's regulatory obligation to detail how it will exercise power over cases already within its jurisdiction. TEX. GOV'T CODE § 571.1244(2); *see also id.* § 571.124(c) (noting the executive director will, before initiating preliminary review, initially determine whether the Commission has jurisdiction).

Subsection 571.1242(g), on the other hand, plainly limits the Commission's jurisdiction. That subsection requires the Commission to either offer settlement "without holding a preliminary hearing" or *dismiss* a complaint within 120 days of a response to the underlying notice or written questions. *Id.* § 571.1242(g). The Government Code also specifies that dismissal requires the Commission to "deny jurisdiction over any subsequent complaint against the respondent that alleges the respondent violated the same statutes or rules based on the same facts alleged in the dismissed complaint." *Id.* § 571.1242(j). Jurisdiction, of course, concerns the authority over an allegation—not *how* that authority is exercised. *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 679 (11th ed. 2020) (defining "jurisdiction" to include "the power or right to exercise authority").

The unambiguous dichotomy between the Commission's jurisdictional deadline and its procedural authority within that jurisdiction is likewise reflected in the "general objectives" of this framework. *See Marriage & Fam. Therapists*, 511 S.W.3d at 33 (explaining that a rule will prove facially invalid if it "runs counter to the general objectives of the statute"). Subchapter E of Chapter 571 provides a system that "protect[s] the constitutional right of the governed to apply . . . for the redress of grievances" and is intended to encourage "the public's confidence and trust in its government" as well as "prohibit[] undue influence" over elections and governmental actions. TEX. GOV'T CODE § 571.001. To this end, the Legislature imposed a multi-stage framework that allows for *prompt* investigation and resolution during preliminary review, *see id.* §§ 571.124–.1242, which necessarily precedes the hearings that may follow, *see id.* §§ 571.125–.132.

History counsels similarly. The Commission's enabling legislation in 1991 did not have a deadline for preliminary review like that in the modern iteration of subsection 571.1242(g). *See* Act of May 27, 1991, 72d Leg., R.S., ch. 305, §§ 1.17–.18, 1991 Tex. Gen. Laws 1290, 1295–96. But "[o]f the 238 sworn complaints filed in calendar years 1998 through 2000, 81 took more than 180 days to resolve, 58 took more than a year to resolve, and 20 remain[ed] unresolved" by 2002. SUNSET ADVISORY COMM'N, STAFF REPORT: TEXAS ETHICS COMMISSION 20 (Mar. 2002). The Legislature thus responded in 2003 with new deadlines that required the Commission to set a matter for preliminary review hearing if left unresolved by agreement within a specified window of time. Act of June 2, 2003, 78th Leg., R.S., ch. 249, § 1.19, 2003 Tex. Gen. Laws 1123, 1129–30. Yet the Commission was "not following" that mandate by 2019, S. Rsch. Ctr., Bill Analysis, Tex. S.B. 548, 86th Leg., R.S. (2019), and a stricter legislative directive followed: The 120-day jurisdictional deadline that governs today. TEX. GOV'T CODE § 571.1242(g), (j). This statutory backdrop confirms what is otherwise apparent in both the unambiguous text of the 120-day deadline and the greater legislative framework itself, which together expedite the complaint process and limit the Commission's regulatory authority to toll or extend *procedural* deadlines over complaints within its jurisdiction.

At bottom, the Government Code does not countenance a rule that purports to toll the Commission's jurisdictional deadline for reasons other than litigation. Both the plain text of subsections 571.062(a), .1242(g), .1244(2) and the "general objectives" of the greater statutory framework collectively reveal that the Commission possesses authority to promulgate procedural rules governing the exercise—not the existence of—its limited jurisdiction. As such, the Commission cannot promulgate rules that toll its jurisdictional deadline for reasons unrelated to litigation or otherwise disturb the Legislature's express efforts to streamline the complaint process such that the Commission's failure to timely offer settlement during preliminary review results in a complete loss of jurisdiction over the allegations in an underlying complaint. *See, e.g.*, *Marriage & Fam. Therapists*, 511 S.W.3d at 33.

### The Commission's exercise of regulatory authority proves inconsistent even with its own reading of the Government Code.

It merits additional note that, even under the Commission's own reading of these statutes,[5] its exercise of rulemaking authority is facially flawed. The Commission points us to two rules that expressly toll the 120-day jurisdictional deadline.[6] The first provides that the 120-day deadline is tolled "beginning on the date the [C]ommission sends the written questions and resets on the date the [C]ommission receives the respondent's written response." 1 TEX. ADMIN. CODE § 12.22(b). The second rule also provides that this statutory mandate is tolled when the Commission's staff applies for a subpoena, "reset[ting]" the statutory deadline on:

> (1) the date the [C]ommission rejects the staff's application for a subpoena;
>
> (2) the date the person to whom the subpoena is directed complies with the subpoena; or
>
> (3) the date the [C]ommission receives a final ruling on a person's failure or refusal to comply with a subpoena that is reported to a district court pursuant to section 571.137(c) of the Government Code.

---

[5] Texas courts typically give "serious consideration" to an agency's interpretation of a statute it enforces "so long as the construction is reasonable and does not conflict with the statute's language." *R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). But no such deference is implicated here because, as previously explained, the statutes at issue are unambiguous and the Commission's rules conflict with that unambiguous text. *See, e.g.*, *Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Env't Quality*, 576 S.W.3d 374, 384 (Tex. 2019). Furthermore, while the Texas Supreme Court never expressly adopted the "agency-deference doctrines employed by federal courts," *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022), Texas' standards bear "roots in federal jurisprudence," Tex. Att'y Gen. Op. No. KP-0115 (2016) at 1. It therefore remains to be seen whether *Chevron*'s recent demise portends a change in Texas law. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron*). In any event, we need not undertake any such analysis here.

[6] Brief from J.R. Johnson, Exec. Dir. Tex. Ethics Comm'n, to Hon. Ken Paxton, Tex. Att'y Gen. at 2–3 (Nov. 26, 2024) ("Commission Brief") (on file with the Op. Comm.).

*Id.* § 12.23(d). Ultimately, the Commission suggests both rules are "valid exercises of [its] general rulemaking authority" and "satisfy the directive of section 571.1244." Commission Brief at 2–3.

We disagree. Though the Commission does not acknowledge the unambiguous dichotomy detailed earlier, *see supra* discussion pp. 3–5, it remains that a rule tolling the 120-day deadline for reasons other than litigation could never alter the limited circumstances in which procedural tolling is expressly contemplated under subsection 571.1244(2). Rule 12.23(d) nonetheless purports to toll the 120-day deadline before the Commission "issues a subpoena," without regard to whether the Commission's "meeting schedule makes it impossible both to provide a reasonable time for response and to comply with the otherwise applicable deadlines." *Contra* TEX. GOV'T CODE § 571.1244(2)(A). This conflict with the Commission's purported source of authority is fatal. *See, e.g.*, *Marriage & Fam. Therapists*, 511 S.W.3d at 33.

Neither can the Commission promulgate a rule that purports to toll the 120-day deadline by starting over that timeframe—contrary to the ordinary meaning of "tolling" itself. *Contra* 1 TEX. ADMIN. CODE §§ 12.22(b), .23(d). In its verb form, "toll" is commonly understood to mean "to stop the running of" or "abate" a particular "time period, esp[ecially] a statutory one." BLACK'S LAW DICTIONARY 1495 (7th ed. 1999). "Tolling" authority therefore implicates a triggering event that temporarily halts the 120-day deadline; to toll is not to start anew.[7] *Cf., e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1059 (11th ed. 2020) (defining "reset" as "to set again or anew" and "to change the reading of often to zero"). Any other reading renders the Legislature's 120-day deadline meaningless. *Contra Sunstate Equip. Co.*, 601 S.W.3d at 690; *Levinson*, 513 S.W.3d at 493.

We thus conclude that, even under the Commission's own reading of its enabling statutes, it cannot "administer" Chapter 571 by expanding the bases on which the 120-day deadline could be tolled while redefining "tolling" in the process. *See, e.g.*, *Marriage & Fam. Therapists*, 511 S.W.3d at 33. As such, the Commission has no authority to toll its deadline outside of litigation.

---

[7] To be sure, the Government Code provides alternative dates on which the 120-day deadline *begins*—either once the Commission "receives a respondent's response to notice . . . or the respondent's response to written questions." TEX. GOV'T CODE § 571.1242(g). But this has no bearing on the Commission's "tolling" authority, which pertains to a timeline that has *begun*.

**S U M M A R Y**

        Subsection 571.1242(g) of the Government Code unambiguously imposes a jurisdictional deadline by which the Texas Ethics Commission must take specified action on a complaint. Subsection 571.1244(2), on the other hand, concerns procedures for preliminary reviews and unambiguously pertains to procedural deadlines—not the Commission's jurisdiction. This is likewise confirmed by the general objectives of the Commission's enabling framework, which aims to streamline the complaint process such that the Commission's failure to timely resolve claims during preliminary review results in a loss of jurisdiction over the underlying allegations. As such, the Commission may not toll its jurisdictional deadline outside of litigation.

        Rules that provide otherwise are facially invalid insofar as they conflict with both the plain text and general objectives of the Commission's enabling framework.

Very truly yours,

*Ken Paxton*

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

AMANDA K. ROMENESKO
Assistant Attorney General, Opinion Committee