# IN THE SUPREME COURT OF TEXAS

════════════
No. 18-1223
════════════

Texas Board of Chiropractic Examiners;
Patrick Fortner, in his Official Capacity as the Board's Executive Director;
and Texas Chiropractic Association, Petitioners,

v.

Texas Medical Association, Respondent

═══════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of Texas
═══════════════════════════════════════

Justice Bland, joined by Justice Boyd, dissenting.

The Texas Legislature strictly limits the scope of practice for chiropractors, optometrists, podiatrists, physical therapists, nurses, and others who are not medical doctors.[1] Chiropractors are non-physician healthcare providers who focus on the spine and musculoskeletal system. Despite this limited area of competence and the Legislature's corresponding limits on chiropractic practice, the Texas Board of Chiropractic Examiners established a rule authorizing chiropractors to perform eye examinations (outside the spine or musculoskeletal system) to diagnose neurological conditions unrelated to the spine or musculoskeletal system.

It is not, however, for the Chiropractic Board to grant such permission. The Texas Constitution vests the Legislature with the authority to "pass laws prescribing the qualifications of

---

[1] *See* Tex. Occ. Code § 151.052(a)(2), (3), (4), (5), (7).

practitioners of medicine."[2] The Legislature has done so by enacting the Medical Practice Act,[3] which exempts some non-physician healthcare providers from its mandates.[4] Chiropractors are among the exempted non-physician providers, but they must "engage strictly in the practice of chiropractic as defined by law."[5] The Chiropractic Act establishes this limited scope of practice for those trained in chiropractic care.[6] The scope of practice for chiropractors is straightforward: chiropractors "diagnose, analyze, examine, or evaluate *the biomechanical condition of the spine and musculoskeletal system of the human body*."[7]

This limited scope does not permit chiropractors to conduct neurological testing or to make diagnoses that do not involve the "biomechanical condition of the spine and musculoskeletal system."[8]

The Chiropractic Board's rule permitting chiropractors to conduct eye examinations to diagnose a sensory nervous system problem of the inner ear is beyond the chiropractic scope of practice that the Legislature has established.[9] The trial court and the court of appeals thus correctly concluded that the Board exceeded its authority in authorizing chiropractors to detect and diagnose whether a patient has neurological problems related to the vestibular system and the inner ear.

---

[2] TEX. CONST. art. XVI, § 31.

[3] TEX. OCC. CODE §§ 151.001–.056; *ante* at 3.

[4] TEX. OCC. CODE § 151.052(a).

[5] *Id.* § 151.052(a)(3) ("This subtitle does not apply to . . . a licensed chiropractor engaged strictly in the practice of chiropractic as defined by law."); *id.* §§ 201.001–.606.

[6] *Id.* § 201.002(b).

[7] *Id.* § 201.002(b)(1) (emphasis added).

[8] *Id.*

[9] 22 TEX. ADMIN. CODE § 78.1(c)(3)(B) (permitting "Technological Instrumented Vestibular-Ocular-Nystagmus Testing").

Neither is related to the spine or musculoskeletal system.[10] Because the Court concludes otherwise, I respectfully dissent.

# I

The Texas Medical Association challenges three Chiropractic Board rules. Two rules define "musculoskeletal system" and "subluxation complex."[11] As they do not directly implicate the scope of practice, the definitions alone do not warrant a judicial determination that the Board exceeded its authority in crafting them.[12] The third rule, however, puts those definitions into use. It authorizes chiropractors to perform vestibular-ocular-nystagmus testing, an eye examination involving the detection of eye movement that can indicate a vestibular, or inner-ear, neurological malady.[13]

The vestibular system is the part of the sensory nervous system that provides the brain with information about motion and balance.[14] The parties do not dispute this, nor do they dispute that inner ears and eyes are not part of the spine or musculoskeletal system.

---

[10] 566 S.W.3d 776, 780, 786–87 (Tex. App.—Austin 2018).

[11] 22 TEX. ADMIN. CODE § 78.1(a)(5), (9).

[12] *See ante* at 24 (holding that the Texas Medical Association failed to demonstrate that the rules "contravene specific language in the [Chiropractic] Act or run counter to the Act's objectives").

[13] The Chiropractic Board's rule states:

Technological Instrumented Vestibular-Ocular-Nystagmus Testing may be performed by a licensee with a diplomate in chiropractic neurology and that has successfully completed 150 hours of clinical and didactic training in the technical and professional components of the procedures as part of coursework in vestibular rehabilitation including the successful completion of a written and performance examination for vestibular specialty or certification. The professional component of these procedures may not be delegated to a technician and must be directly performed by a qualified licensee.

22 TEX. ADMIN. CODE § 78.1(c)(3)(B). Despite the Board's use of the term "chiropractic neurology," neither the Legislature nor the Board recognizes such a specialty.

[14] *Vestibular*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020) ("2. of, relating to, or affecting the perception of body position and movement <the ~ system of the inner ear>").

Because vestibular-ocular-nystagmus testing and the neurological diagnoses it potentially informs have no connection to the spine or musculoskeletal system, chiropractors by statute must not perform it. The Act defines the permissible scope of chiropractic practice. It specifies that a person "practices chiropractic" only when examining, diagnosing, or treating a condition of the spine or musculoskeletal system:

> A person practices chiropractic under this chapter if the person:
>
> (1) uses objective or subjective means to diagnose, analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body; [or]
>
> (2) performs nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system . . . .[15]

The Board's authority to implement this scope of practice both empowers and constrains. The Chiropractic Act authorizes the Board to "adopt rules clarifying what activities are included within the scope of the practice of chiropractic and what activities are outside of that scope."[16] Because the Board's role is to "clarify" the activities that fall within the practice of chiropractic, it may permit only what the Legislature allows.[17] The Board has no authority to unilaterally expand the scope of practice of chiropractic care beyond its statutory limits.[18]

Determining the boundaries of chiropractic practice is an act of policymaking, which is the Legislature's prerogative.[19] When interpreting statutes, we give effect to the Legislature's intent

---

[15] TEX. OCC. CODE § 201.002(b)(1)–(2).

[16] *Id.* § 201.1525.

[17] *Id.*

[18] *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017); *Pruett v. Harris Cty. Bail Bond Bd.*, 249 S.W.3d 447, 452–53 (Tex. 2008).

[19] *See Univ. of Tex. v. Garner*, 595 S.W.3d 645, 651 (Tex. 2019) (per curiam).

as it is reflected in the statute's plain text.[20] We "presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."[21] Adhering to this principle protects executive agencies and courts from substituting their policy preferences for the elected Legislature's.[22] It is not for courts, under the guise of agency deference, to bless agency actions that exceed statutory limits that the Legislature imposes.

Deference to the Legislature's policy decisions—including decisions concerning chiropractors' limited scope of practice—informs our review of the Board's rules in this case.[23] As an administrative agency, the Chiropractic Board has "only those powers that the Texas Legislature has expressly conferred upon it and those implied powers that are reasonably necessary to carry out its statutory duties. It can adopt 'only such rules as are authorized by and consistent with its statutory authority.'"[24] Thus, a party may successfully challenge an agency rule by demonstrating that it "contravenes specific statutory language" or that it "runs counter to the general objectives of the statute."[25]

## II

As both the trial court and the court of appeals concluded, the Chiropractic Board's rule authorizing chiropractors to perform an eye test to make a neurological diagnosis contravenes the

---

[20] *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017).

[21] *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010).

[22] *Davenport v. Garcia*, 834 S.W.2d 4, 42 (Tex. 1992) (Hecht, J., dissenting).

[23] "[I]nterpreting the Act and the rules involves only questions of law, which we determine de novo." *Ante* at 15.

[24] *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) (internal citation omitted) (quoting *R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992)).

[25] *Id.*; *ante* at 17.

Chiropractic Act and its objectives.[26] The Board's definitions of "musculoskeletal system"[27] and "subluxation complex"[28] clarify the Legislature's scope-of-practice limitations.[29] Applying the Court's reasoning, which appropriately confines these definitions, demonstrates that the Board surpassed its statutory boundaries by permitting chiropractors to conduct neurological examinations through vestibular-ocular-nystagmus testing.

The Court rejects the argument that the definitions of "musculoskeletal system" and "subluxation complex" permit chiropractors to treat "virtually any disease and disorder in the whole body, . . . including . . . neurological diseases and disorders." In doing so, the Court emphasizes the Legislature's limits on chiropractic practice and on the definitions themselves. Though chiropractors need not "ignore" nerves, the Court explains, a chiropractor's diagnosis, analysis, examination, or evaluation of any condition must relate to the "the muscles, tendons, ligaments, bones, joints, and tissues 'that move the body and maintain its form.'"[30] By statute, *any* chiropractic practice must be tethered to the spine or musculoskeletal system.

The Court abandons this limiting principle, however, in holding that neither the text nor the objectives of the Act forbid the Board from authorizing chiropractors to conduct neurological examinations through vestibular-ocular-nystagmus eye testing. This examination relates to the

---

[26] 566 S.W.3d 776, 786–87 (Tex. App.—Austin 2018).

[27] "The system of muscles and tendons and ligaments and bones and joints and associated tissues and nerves that move the body and maintain its form." 22 TEX. ADMIN. CODE § 78.1(a)(5).

[28] "A neuromusculoskeletal condition that involves an aberrant relationship between two adjacent articular structures that may have functional or pathological sequelae, causing an alteration in the biomechanical and/or neuro-physiological reflections of these articular structures, their proximal structures, and/or other body systems that may be directly or indirectly affected by them." *Id.* § 78.1(a)(9).

[29] *See ante* at 7.

[30] *Ante* at 22 (quoting 22 TEX. ADMIN. CODE § 78.1(a)(5)).

central nervous system—that connected with the brain and the sensory receptors in the inner ear. The test measures a patient's eye movements with a camera or through electrodes. The trial court found that it is used to diagnose a problem of the brain, inner ear, or eyes, none of which is part of the spine or musculoskeletal system—a finding the Board does not dispute. Because such an examination is divorced from the spine and musculoskeletal system, a chiropractor's use of it exceeds the scope of practice set by the Legislature.

The Board's definition of "musculoskeletal system" cannot expand the chiropractic scope of practice to the purely neurological when the statute expressly confines that practice to the musculoskeletal system. Nor can references to "neuro" in the definition of "subluxation complex" expand chiropractic practice beyond the statute's scope of practice; the Legislature used "subluxation complex" to define the procedures a chiropractor may perform, not the diagnoses a chiropractor may make.[31] Even the Board's definition confines "neuro" to "neuromusculoskeletal condition" and "neuro-physiological," tying the neurological to the muscular and skeletal.[32]

The Board nonetheless maintains, and the Court agrees, that a chiropractor may diagnose a purely neurological condition to "rule it out" as the cause of the patient's symptoms. If chiropractors may examine patients using a test designed to diagnose conditions outside the

---

[31] The statute states:

A person practices chiropractic under this chapter if the person:

(1) uses objective or subjective means to diagnose, analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body; [or]

(2) performs nonsurgical, nonincisive procedures, including adjustment and manipulation, to *improve the subluxation complex* or the biomechanics of the musculoskeletal system . . . .

TEX. OCC. CODE § 201.002(b) (emphasis added). Accordingly, a chiropractor can "improve" a subluxation complex but may not diagnose one when the cause is neurological.

[32] 22 TEX. ADMIN. CODE § 78.1(a)(9).

chiropractic scope of practice—and may conduct that examination on body parts (eyes) and systems (sensory nervous) also outside that scope—then the Legislature's limitations on chiropractic practice lose all meaning. A chiropractor's practice becomes coextensive with a medical doctor's practice, subject only to chiropractors' self-assessments of their capabilities and limits.

Such a result is contrary to the larger statutory scheme, which provides for a limited scope of practice for non-physician healthcare professionals, including (in addition to chiropractors) dentists, optometrists, and podiatrists.[33] For these non-physician providers, the statutes defining the scope of practice require that the practice or procedure relate to a specific body part—the mouth, the eye, the foot.[34] The Court's reading severs this connection, allowing tests that do not relate to the specific structure and permitting practitioners to go beyond the scope of practice to "rule out" causes of certain disorders.[35] Much as an optometrist could not conduct neurological examinations outside the eye, a chiropractor cannot conduct them outside the musculoskeletal system. Licensed chiropractors are exempt from the prohibition against practicing medicine only if they "strictly" conform to the practice of chiropractic as the Chiropractic Act defines it.[36]

The Board concedes that "chiropractors use [vestibular-ocular-nystagmus testing] to *rule out* vestibular causes of dizziness." It reasons that chiropractors may "[d]ifferentiate a patient or

---

[33] Like chiropractors, these practitioners are exempted from the Medical Practice Act. TEX. OCC. CODE § 151.052(a)(1), (2), (3), (5).

[34] *See id.* § 251.003 (defining the scope of practice for dentists); *id.* § 351.002 (defining the scope of practice for optometrists); *id.* § 202.001 (defining the scope of practice for podiatrists); *see also Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Medical Exam'rs*, 254 S.W.3d 714, 717, 721–22 (Tex. App.—Austin 2008, pet. denied) (holding that by adding "portions of what in layman's terms is called the ankle" to the podiatry scope of practice the Podiatric Board exceeded its authority).

[35] *See ante* at 25, 27.

[36] TEX. OCC. CODE § 151.052(a)(3).

condition for which chiropractic treatment is appropriate from a patient or condition that is in need of care from a medical or other class of provider."[37] In employing such a construction, the Board oversteps its legislatively delegated authority.

Any diagnosis—affirmative or negative—made by a chiropractor must be within the scope of chiropractic care. Chiropractors are precluded by statute from diagnosing a purely neural or vestibular condition using an eye examination. To "rule out" a neurological condition based on a neurological examination is to say, affirmatively, that it is not a cause of the patient's symptoms. The Court observes that chiropractors may draw blood to perform a diagnosis.[38] It is the Legislature, however, that permits chiropractors to draw blood for diagnostic testing.[39] In contrast, here it is the Board, not the Legislature, that seeks to empower chiropractors to perform tests and make diagnoses that reach beyond the legislative scope of chiropractic care. Although a chiropractor need not always refer a patient with a generalized problem to a medical doctor, when a diagnosis relies on an examination outside the spine or musculoskeletal system and is unrelated to the spine or musculoskeletal system, neither the examination nor the diagnosis lies within a chiropractor's scope of practice.[40]

Chiropractors cannot conduct examinations outside the spine and musculoskeletal system to diagnose a patient with a neurological condition—in this case, a vestibular disorder. Neither are they permitted to say, definitively, that a vestibular condition is *not* the cause of a patient's symptoms based on that same neurological test and examination. When a chiropractor tells a

---

[37] 22 TEX. ADMIN. CODE § 78.1(c)(1)(E).

[38] *Ante* at 5.

[39] TEX. OCC. CODE § 201.002(a)(3).

[40] *See id.* § 201.002(b).

patient that a neurological examination or test has "ruled out" a neurological condition as a cause of the patient's symptoms, it is unlikely that the patient will seek alternative care.

The Legislature reasonably could have recognized that a chiropractic diagnosis of a neurological condition—whether ruling it in or ruling it out—compromises patient safety. There are rational reasons for the policy choices the Legislature made, foremost among them, its constitutional obligation to regulate the practice of medicine. Regulating the practice of medicine protects the public from those who are not qualified by aptitude, education, and experience to diagnose and treat medical conditions generally (as opposed to specific conditions or structures). Whether some chiropractors are "trained" to perform vestibular-ocular-nystagmus testing does not answer whether they are qualified to interpret those results and diagnose a neurological condition that is unrelated to the spine or musculoskeletal system based on those results. It also does not answer whether the Board's rule goes beyond what the Legislature has permitted. It does.[41]

Finally, the Board urges that the court of appeals' enforcement of the Chiropractic Act's scope-of-practice statute is "unreasonable governmental interference" with a chiropractor's right to "pursue a lawful calling." If the Act unduly hampers chiropractic care, however, it is for the Legislature to address and amend, not the Chiropractic Board, and not our Court. Though the Chiropractic Board may disagree with the Legislature's policy, the Board does not contest that the scope of practice established in the Chiropractic Act is founded on the Legislature's constitutional

---

[41] *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) ("[W]e must decide this case based on the relevant Texas statutes, not on whether [marriage and family therapists] are qualified to make [Diagnostic and Statistic Manual of Mental Disorders] diagnoses or whether the DSM or other states' laws allow them to.").

authority to regulate the practice of medicine. The Legislature's limits are reasonably designed to protect patients by ensuring that their healthcare providers practice within their areas of competence. Through rulemaking, the Board effectively has nullified the Legislature's scope-of-practice limits. Our Court should not acquiesce to the Board's unauthorized exercise of power.

\*    \*    \*

The Chiropractic Board's rule permitting neurological examinations and diagnoses unrelated to the spine or musculoskeletal system contravenes the Chiropractic Act's limits on chiropractic care. The rule defies the Act's principal objective, which is to constrain the practice of non-physician healthcare providers to their areas of competence. We should hold that the Board of Chiropractic Examiners exceeded its statutory powers in authorizing chiropractors to conduct neurological examinations to diagnose disorders unrelated to the spine or musculoskeletal system. Because we do not, I respectfully dissent.

_____

Jane N. Bland
Justice

OPINION DELIVERED:  January 29, 2021

11