# Supreme Court of Texas

No. 22-0987

In re A.R.C.

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued October 25, 2023**

JUSTICE YOUNG delivered the opinion of the Court.

A court may not order involuntary civil commitment unless the State complies with a host of substantive and procedural requirements. Only one such requirement is at issue here: that, in counties where "a psychiatrist is available," a psychiatrist must complete at least one of two required "certificates of medical examination for mental illness." Tex. Health & Safety Code § 574.009(a). We must decide whether the second-year psychiatry residents who signed certificates in this case qualify as psychiatrists. We hold that they do and therefore reverse the court of appeals' contrary judgment.

The factual background is largely undisputed. Respondent A.R.C., then a 34-year-old man, exhibited psychotic symptoms and delusional behavior during a visit to the emergency room early on Sunday, July 24, 2022. A.R.C.'s conduct led the attending physician, Dr. Morales, to file an application for emergency detention that morning. A magistrate soon

signed a warrant that authorized A.R.C. to be detained in a medical facility for up to forty-eight hours and required A.R.C. to undergo further medical examination. The following morning—Monday, July 25—Dr. Paez examined A.R.C. Dr. Paez was a second-year psychiatry resident at the Texas Tech University Health Sciences Center El Paso Paul L. Foster School of Medicine, practicing under a "physician-in-training" permit.

The results of Dr. Paez's examination were troubling enough to trigger a series of filings and actions that took place on Tuesday, July 26. Dr. Paez prepared a certificate of medical examination based on his evaluation of A.R.C. He also filed an application for temporary court-ordered mental-health services. In both filings, Dr. Paez stated that A.R.C. presented a substantial risk of serious harm to himself or others. Around the same time, the El Paso County Attorney filed a motion for an order of protective custody in reliance on these medical records. The probate court soon signed the requested order. Among other things, the order set two hearings in rapid succession: a probable-cause hearing for the morning of Thursday, July 28, and a final hearing for the morning of Monday, August 1.

The central role of the probable-cause hearing was to determine whether A.R.C. "present[ed] a substantial risk of serious harm to [himself] or others to the extent that [he could not] be at liberty pending the [final] hearing." *Id.* § 574.025(a). The judge so found, and on the afternoon of July 28, he signed an order confirming that he had made the finding about A.R.C. at the hearing. Accordingly, the court concluded that there were sufficient grounds for continued detention pending the upcoming final hearing.

2

On the following morning—Friday, July 29—another physician, Dr. Kutcher-Diaz, examined A.R.C. and then signed a second certificate of medical examination. Dr. Kutcher-Diaz, like Dr. Paez, was a second-year psychiatry resident. In his certificate, he determined that A.R.C. was mentally ill and that this mental illness made it likely that A.R.C. would cause serious harm to himself. This second certificate of medical examination before the final hearing was necessary to comply with a statutory requirement:

> A hearing on an application for court-ordered mental health services may not be held unless there are on file with the court at least two certificates of medical examination for mental illness completed by different physicians each of whom has examined the proposed patient during the preceding 30 days. At least one of the physicians must be a psychiatrist if a psychiatrist is available in the county.

Tex. Health & Safety Code § 574.009(a).

On the morning of August 1, as the final hearing was about to commence, A.R.C. filed a motion to dismiss based on the State's alleged noncompliance with § 574.009(a). The probate court held the hearing as scheduled. A.R.C. attended. He was represented by counsel, who stipulated in open court as to Dr. Kutcher-Diaz's psychiatric expertise but argued that neither Dr. Paez nor Dr. Kutcher-Diaz qualified as a "psychiatrist" under the statute. Both doctors, A.R.C. emphasized, were residents training under more senior doctors and were licensed under the physician-in-training program. The residents' expertise was beside the point because, if a "psychiatrist" had signed neither certificate, the statutory predicate would remain unsatisfied, requiring the probate court to dismiss the case and order A.R.C.'s immediate release.

3

The court rejected A.R.C.'s contention that the doctors did not qualify as psychiatrists under the statute, finding that both "[c]ertificates [were] in compliance with the Texas Health & Safety Code." After hearing the arguments of counsel and taking live evidence, including from Dr. Kutcher-Diaz and from A.R.C. himself, the judge ultimately ordered A.R.C. to undergo in-patient mental health services for forty-five days and, in a separate order, to receive forced medication.

On appeal to the Eighth Court of Appeals, A.R.C. again argued that the residents did not qualify as psychiatrists and that, even if they did, the evidence was legally and factually insufficient to support the probate court's commitment order. Although the forty-five-day period had passed and A.R.C. was no longer involuntarily committed, the court of appeals concluded that the dispute was not moot. We agree. An involuntary-commitment order imposes collateral consequences under federal and state law. *See, e.g.*, 18 U.S.C. §§ 922(g)(4), 924(a)(8); Tex. Gov't Code § 411.172. For this and other reasons, the jurisdiction of the court of appeals to review the probate court's order was secure, and so is ours.

On the merits, a divided court of appeals agreed with A.R.C.'s argument that the residents were not psychiatrists within the statute's meaning and did not reach his alternative contentions. The court vacated the probate court's order and dismissed the application. 657 S.W.3d 585, 595 (Tex. App.—El Paso 2022). According to the majority, this conclusion did not require it to determine what "psychiatrist" means. *Id.* at 592. Its chief rationale was that the statute defines "physician" to expressly include physician-in-training permit holders, like the residents in this

4

case, but does *not* define "psychiatrist" the same way. *Id.* at 593. Justice Palafox dissented. She would have looked to what "psychiatrist" means and would have held that the term, as used in the statute, includes the psychiatry residents here. *Id.* at 597–98 (Palafox, J., dissenting).

We agree with Justice Palafox. The statute does not now and since its original enactment in 1957, *see* Mental Health Code, 55th Leg., R.S., ch. 243, 1957 Tex. Gen. Laws 505, never has defined "psychiatrist." A nonexistent definition's failure to reference physician-in-training permits cannot resolve whether psychiatry residents qualify as psychiatrists. Other statutory provisions, however, combined with the ordinary meaning of "psychiatrist," show that the certificates signed by Dr. Paez and Dr. Kutcher-Diaz complied with § 574.009(a).

First, the statute makes clear that psychiatrists are a subset of the larger class of physicians. Two physician-signed certificates are necessary in larger counties, and "one *of the physicians* must be a *psychiatrist*." Tex. Health & Safety Code § 574.009(a) (emphasis added). Moreover, § 574.009(b) allows judges to directly "appoint the necessary physicians" if certificates are not filed with an application for court-ordered mental health services. What the statute says about physicians, therefore, helps inform its understanding of psychiatrists.

Second, the statute includes a detailed definition of "physician." That definition is directly relevant to residency status because, under the statute, a "physician" is

(A) a person licensed to practice medicine in this state;

(B) a person employed by a federal agency who has a license to practice medicine in any state; or

(C) a person authorized to perform medical acts under a

5

physician-in-training permit at a Texas postgraduate training program approved by the Accreditation Council for Graduate Medical Education, the American Osteopathic Association, or the Texas Medical Board.

*Id.* § 571.003(18). Dr. Paez and Dr. Kutcher-Diaz were practicing under physician-in-training permits when they completed A.R.C.'s certificates of medical examination, so they unquestionably qualified as "physicians" under § 571.003(18)(C). A.R.C. does not dispute this conclusion.

So psychiatrists are physicians, and physicians include those practicing under a physician-in-training permit. The residents' status as psychiatrists therefore turns on whether the word "psychiatrist" conveys a meaning that excludes Dr. Paez and Dr. Kutcher-Diaz, despite their status as physicians in a psychiatry-residency program. The court of appeals was thus mistaken to conclude that § 574.009(a)'s scope can be ascertained without examining what "psychiatrist" means.

With no statutory definition of that term, we must apply its ordinary meaning. This Court has considered a blend of standard and medical dictionaries when interpreting otherwise undefined medical terms. *See, e.g.*, *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35–36 (Tex. 2017). Following this approach, we have no trouble concluding that the term "psychiatrist" has a plain and discernible meaning that reaches the two residents here.

An array of dictionaries reflects the basic point that—whether taken from the perspective of 1957, when what is now § 574.009(a) was first enacted, or more recently—a psychiatrist is just "a physician who practices psychiatry." *Psychiatrist*, Random House Dictionary of the English Language (2d ed. 1987); *see also Psychiatrist*, Webster's New

6

International Dictionary (2d ed. 1934) ("[a] specialist in psychiatry"); *Psychiatrist*, Stedman's Medical Dictionary (5th unabridged lawyer's ed. 1982) ("A physician who specializes in psychiatry; the medical specialist in the diagnosis and treatment of mental diseases."); *Psychiatrist*, American Heritage Dictionary of the English Language (5th ed. 2011) ("[a] physician who specializes in psychiatry"); *Psychiatrist*, Psychiatric Dictionary (5th ed. 1981) ("A psychiatrist is a physician who *has had* advanced training in the diagnosis and treatment of mental disorders." (emphasis added)).

Psychiatrists, in short, are physicians who specialize their practice in psychiatry. Because everyone agrees that Dr. Paez and Dr. Kutcher-Diaz qualify as physicians under § 571.003(18)(C), all that remains is to determine whether they specialize their practice in psychiatry. A specialist is "[a] physician whose practice is limited to a particular branch of medicine or surgery, *esp. one certified* by a board of physicians." *Specialist*, American Heritage College Dictionary (3d ed. 1993) (emphasis added); *see also Specialist*, Webster's New International Dictionary (2d ed. 1934) ("One who devotes himself to some special branch of activity . . . as a doctor who devotes himself to certain diseases."); *Specialist*, Sloane-Dorland Annotated Medical-Legal Dictionary (1987) ("[A] physician whose practice is limited to a particular branch of medicine or surgery, *especially one who, by virtue of advanced training, is certified by a specialty board* as being qualified to so limit his practice." (emphasis added)); *Specialize*, American Heritage Dictionary of the English Language (5th ed. 2011) ("To pursue a special activity, occupation, or field of study: *a doctor who specializes in cardiology*.").

7

To be a specialist under these definitions, it is sufficient but not necessary to be board certified. Board-certified psychiatrists are especially well credentialed specialists, not those who are minimally qualified to be called specialists. The statute easily *could* impose such a heightened standard—requiring not merely a psychiatrist, but a board-certified one, for example—yet § 574.009(a) does not. In any event, A.R.C. expressly abandoned at oral argument the contention that only board-certified psychiatrists qualify under the statute. That concession was sensible given the common usage of the relevant terms.

Thus, physicians who primarily limit their practice to psychiatry—and certainly such physicians who have received advanced training in psychiatry—are physicians who specialize in psychiatry. Both Dr. Kutcher-Diaz and Dr. Paez qualify. Both had received advanced training in psychiatry before entering the second year of their psychiatry residencies. At the final hearing, Dr. Kutcher-Diaz testified that he had admitted patients during his first year of residency when he worked at the El Paso Psychiatric Center and that, as a second-year resident, his medical practice involved "treat[ing] patients with mental illness." The amicus brief for Texas Tech University Health Sciences Center at El Paso offers further context. By their second year, it observes, the residents had completed "a six month rotation at the State of Texas Hospital-El Paso Psychiatric Center treating exclusively mentally ill patients, a five month rotation in internal medicine, and a one month rotation in neurology."

We hold that a physician who can be said to specialize in psychiatry qualifies as a psychiatrist under § 574.009(a). Common sense suggests that physicians well into a *psychiatry residency* will satisfy that standard.

8

The label "psychiatry residency" does not resolve the question, of course. If a hypothetical residency delayed specialized psychiatric training or delayed residents' ability to primarily practice psychiatry, those residents would not qualify as "psychiatrists" until the residency afforded them those opportunities. Such a hypothetical residency does not affect this case because Dr. Kutcher-Diaz and Dr. Paez had clearly passed any dividing line between psychiatrists and non-psychiatrists by the time they completed A.R.C.'s certificates of medical examination.

Our discussion of the minimum statutory requirement for qualification as a "psychiatrist" should not obscure that, under Chapter 574 of the Mental Health Code, it is the *court*—not any physician, no matter how credentialed—that determines whether involuntary commitment is necessary or lawful. Only a judge can "order a proposed patient to receive court-ordered temporary inpatient mental health services," and such an order is permissible "only if the judge or jury finds, from clear and convincing evidence, that [the enumerated statutory elements have been satisfied]." Tex. Health & Safety Code § 574.034(a). If the court views the medical testimony provided as inadequate or unpersuasive—even if the "physician" and "psychiatrist" requirements of § 574.009(a) are unquestionably satisfied—the court will presumably find the demanding standard for civil commitment to be unmet.

We finally observe that while the parties ably address policy grounds for one view of "psychiatrist" or another, our decision does not embrace or reject any of them. We merely give the statute the meaning that its text and structure require. The Texas Constitution provides that "[n]o person shall be committed as a person of unsound mind except on

9

competent medical or psychiatric testimony." Tex. Const. art. I, § 15-a. No party has contended that *any* of the proposed understandings of "psychiatrist" in this case would transgress that basic constitutional requirement. So long as the legislature adheres to that requirement, it may strike whatever balance it determines best protects the rights of individuals and of the public. The legislature can enhance the minimum qualifications for psychiatrists and other physicians if it concludes that the paramount need is greater experience or expertise. It could, for example, define "psychiatrist" to exclude residents or to require board certification. It could mandate psychiatrists in all cases, not only in larger counties where psychiatrists are available. Or, contrariwise, the legislature could relax the standard—for example, by requiring psychiatrists only in certain contexts or only when a court so demands. Protecting individual liberties and the larger public in a context of limited resources implicates exactly the kind of policy considerations that legislative bodies are equipped to balance and courts are not.

We hold that the residents in this case were "physicians" who specialized their practices in psychiatry and thus qualified as "psychiatrists" under § 574.009(a). The judgment of the court of appeals is reversed and the case is remanded to that court for consideration of A.R.C.'s remaining challenges.

Evan A. Young
Justice

**OPINION DELIVERED:** February 16, 2024

10