

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

February 12, 2026

The Honorable Phil Sorrells
Tarrant County Criminal District Attorney
401 West Belknap
Fort Worth, Texas 76196

> **Opinion No. KP-0517**
>
> Re: Investigatory obligation following "the death of a prisoner in county jail" under Government Code § 511.021(a) (RQ-0590-KP)

Dear Mr. Sorrells:

Your request pertains to the construction of subsection 511.021(a) of the Government Code, which requires an independent investigation by an outside law enforcement agency "on the death of a prisoner in a county jail."[1] TEX. GOV'T CODE § 511.021(a). While you indicate that there is no question that subsection 511.021(a) requires an independent investigation when a prisoner dies inside a county jail facility, you explain that a disagreement exists over whether an independent investigation is likewise required when a prisoner dies *outside* the county jail facility. *See* Request Letter at 3–4 (referencing in-hospital deaths). You thus ask whether the investigatory requirements under subsection 511.021(a) are limited to prisoner deaths occurring within the county jail facility or whether the requirements extend to deaths of prisoners who are in custody but outside the jail facility. *Id.* at 5.

### The Sandra Bland Act and accompanying regulations

To provide context to your inquiry, we begin with a brief overview of the relevant statutory and regulatory framework. The Eighty-fifth Legislature passed, and Governor Abbott signed into law, the Sandra Bland Act. *See generally* Act of May 22, 2017, 85th Leg., R.S., ch. 950, § 1.01, 2017 Tex. Gen. Laws 3801, 3801. The Act added section 511.021 to Chapter 511 of the Government Code, which governs the Commission on Jail Standards—a state agency tasked with, *inter alia*, establishing "reasonable minimum standards for the construction and operation of [county and privately operated municipal] jails" across the State. *Id.* § 3.07 at 3807; TEX. COMM'N ON JAIL STANDARDS, COMPACT WITH TEXAS, https://www.tcjs.state.tx.us/compact-with-texas (last visited July 31, 2025).

---

[1] Letter from Hon. Phil Sorrells, Tarrant Cnty. Crim. Dist. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 3 (Mar. 21, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0590KP.pdf ("Request Letter").

Subsection 511.021(a) concerns the investigation of prisoner deaths occurring in county jails and provides, in pertinent part, that "[o]n the death of a prisoner in a county jail, the [C]ommission shall appoint a law enforcement agency, other than the local law enforcement agency that operates the county jail, to investigate the death as soon as possible." TEX. GOV'T CODE § 511.021(a);[2] *see also id.* § 511.001(1) ("'Commission' means the Commission on Jail Standards."). Subsection 511.021(c) further directs that "[t]he [C]ommission shall adopt any rules necessary relating to the appointment of a law enforcement agency under [s]ubsection (a), including rules relating to cooperation between law enforcement agencies and to procedures for handling evidence." *Id.* § 511.021(c).

The Commission submitted a brief in response to your request in which it asserts that it promulgated title 37 of the Texas Administrative Code, subsection 269.1(5) ("the Rule"), pursuant to its rulemaking authority in Texas Government Code subsections 511.021(c), 511.009(a)(2), and 511.009(a)(19).[3] In contrast to the language in subsection 511.021(a), however, the Rule provides that the Commission "shall be notified of all deaths of inmates *while in the custody* of sheriff/operator within 24 hours of the death." 37 TEX. ADMIN. CODE § 269.1(5)(A) (emphasis added). The Rule further states both that the Commission "shall appoint a law enforcement agency, other than the local law enforcement agency that operates the county jail, to investigate the death" and that a report shall be submitted to the Commission following the investigation. *Id.* § 269.1(5)(B)–(C). With this background in mind, we first turn to the language of subsection 511.021(a).

### Subsection 511.021(a) requires the appointment of an independent law enforcement agency to investigate prisoner deaths that occur within a county jail facility

The language in subsection 511.021(a) makes clear that the Commission "shall appoint" an independent law enforcement agency to conduct an investigation "[o]n the death of a prisoner in a county jail." TEX. GOV'T CODE § 511.021(a). Accordingly, to determine precisely when the requirements in subsection 511.021(a) apply, we must ascertain the meaning of the phrase "prisoner in a county jail."

The polestar of statutory construction is to "ascertain and give effect to the Legislature's intent." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (citations omitted). We generally "look to and rely on the plain meaning of [the] statute's words as expressing

---

[2] The death of a county prisoner triggers an additional investigatory and reporting requirement under Article 49A.151 of the Code of Criminal Procedure, which requires county sheriffs to notify the Attorney General of "the death of a person under the care, custody, or control of or residing in the institution" and to "prepare and submit to the office of the attorney general a report containing all facts relevant to the person's death." Act of May 15, 2025, 89th Leg., R.S., ch. 202, § 1.01, 2025 Tex. Sess. Law Serv. 391, 411–12 (to be codified at TEX. CODE CRIM. PROC. art. 49A.151(b)). This legislation, which goes into effect in April 2027, will replace Article 49.18, which, *inter alia*, requires the sheriff to notify the Attorney General by report "[i]f a person dies while in the custody of a peace officer or as a result of a peace officer's use of force or if a person incarcerated in a jail, correctional facility, or state juvenile facility dies." TEX. CODE CRIM. PROC. art. 49.18(b). We do not offer an opinion as to whether the requirements in these provisions extend to prisoner deaths occurring outside of a prison or who may conduct the related investigation.

[3] *See* Brief from Brandon S. Wood, Exec. Dir. Tex. Comm'n on Jail Standards, to Op. Comm. at 2 (rec'd Apr. 25, 2025) ("Commission Brief") (on file with the Op. Comm.).

legislative intent," *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017), "typically look[ing] first to [a term's] dictionary definition[]" to determine its plain meaning, *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). Nevertheless, whenever "a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). That is not to say that we should "consider the meaning of the term to be defined in total isolation from its common usage." *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014). Rather, we "construe the words and phrases chosen by the Legislature in [the] context" of the statute as a whole. *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019).

We begin by examining the phrase "prisoner in a county jail." The phrase starts with the word "prisoner," which section 511.001 defines as "a person confined in a county jail." TEX. GOV'T CODE § 511.001(7). While the statute does not define "confined," the term ordinarily means "[b]ounded, limited, restricted, restrained, shut up, enclosed, imprisoned, etc." THE OXFORD ENGLISH DICTIONARY 709 (2d ed. 1989). Following "prisoner" is the phrase "in a county jail." The term "in" typically means "[w]ithin the limits, bounds, or area of," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 885 (5th ed. 2016), and the statute defines "county jail" as "a facility operated by or for a county for the confinement of persons accused or convicted of an offense," TEX. GOV'T CODE § 511.001(3).

Rules of grammar and common usage also inform our understanding of the statutory text. TEX. GOV'T CODE § 311.011(a). Relevant here, "in a county jail" is a prepositional phrase. A prepositional phrase generally is understood to modify the "nearest reasonable referent." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152 (2012); *see also Transformative Learning Sys. v. Tex. Educ. Agency*, 572 S.W.3d 281, 288 (Tex. App.—Austin 2018, no pet.) ("A subsequent prepositional phrase is generally assumed to modify the nearest antecedent unless such a construction is unreasonable."). The nearest referent in subsection 511.021(a) is "prisoner." Critically, however, because "prisoner" means "a person confined in a county jail," TEX. GOV'T CODE § 511.001(7), reading "in a county jail" as modifying "prisoner" would cause the provision at issue to effectively read as "on the death of a person confined in a county jail in a county jail," creating a possible redundancy.

We presume that the Legislature's choice of words is intentional, and "we endeavor to afford meaning to all of a statute's language so none is rendered surplusage." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 688 (Tex. 2021) (orig. proceeding). Given this discrepancy in the statutory language, it is not clear that the Legislature intended for "in a county jail" to modify "prisoner" in subsection 511.021(a). Accordingly, we must look to contextual clues to discern the statute's meaning. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 726 (Tex. 2024) (stating that courts "rel[y] on statutory context when construing statutes").

We first examine other sections within Chapter 511, as we must "look to the statutory scheme as a whole in order to establish the meaning" of the provision at issue here. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 721 (Tex. 2016); *accord* SCALIA & GARNER, *supra*, at 167 ("The text must be construed as a whole."). Chapter 511 references "prisoner in a county jail" or "prisoner in the county jail" in four subsections in addition to subsection 511.021(a). *See* TEX. GOV'T CODE

§§ 511.0101(a)(4), .012(b), .020(a), .0098(a). To be sure, each of these provisions might at first blush appear to suffer from the same redundancy issue as the language in subsection 511.021(a). But a closer examination of the statutory language reveals that "in a county jail" must serve a different purpose when included in a specific statutory provision than it serves in the general statutory definition of "prisoner" in section 511.001.

Subsection 511.0098(a), for example, directs the Commission to adopt procedures related to the provision of mental health services to a "prisoner in a county jail under a contract with the county." *Id.* § 511.0098(a). The phrase "in a county jail" is modified by the phrase "under a contract with the county," which plainly highlights the nature of a particular county jail in which the prisoner is confined. The Legislature's inclusion of "in a county jail" therefore specifies the prisoner's location.

Similarly, other provisions—like those in subsections 511.0101(a)(4), 511.012(b), and 511.020(a)—use the phrase "prisoner in *the* county jail." *Id.* §§ 511.0101(a)(4), .012(b), .020(a) (emphasis added). While these provisions do not contain qualifying language like in subsection 511.0098(a), their context nevertheless indicates that "in the county jail" also invokes the prisoner's location. Indeed, subsection 511.020(a) requires the sheriff of each county jail to report to the Commission regarding the occurrence of any enumerated "incidents involving a prisoner in the county jail," *id.* § 511.020(a); subsection 511.0101(a)(4) directs the county to submit a monthly report to the Commission regarding, *inter alia*, "the total cost to the county during the preceding month of housing prisoners . . . calculated based on the average daily cost of housing a prisoner in the county jail," *id.* § 511.0101(a)(4); and subsection 511.012(b) permits the Commission to "prohibit confinement of prisoners in the county jail" if the county commissioners or sheriff do not comply with Commission rules and procedures or state law within a specified time period, *id.* § 511.012(b). Each of these provisions concern specific matters that relate to prisoners in a certain county jail facility—again revealing that the Legislature included the phrase "in the county jail" to focus on a particular county jail location.

Nevertheless, while the language in the above provisions reflects that the phrase "in a county jail" or "in the county jail" signifies a prisoner's geographic location, the same cannot be said for "in a county jail" in the statutory definition of "prisoner." Indeed, if "prisoner" means a person physically confined in a county jail, then the language in the above provisions specifying a prisoner's location in the county jail would constitute surplusage. This construction would also create practical problems in the application of other provisions in Chapter 511 that reference prisoners because conditioning one's status as a prisoner on his location in a county jail would cause a person to cease being a "prisoner" once he leaves the county jail. Subsection 511.0105(b)(4), for example, requires each county jail to file with the Commission a report documenting the restraint of a pregnant prisoner, and that report must include, *inter alia*, "whether the prisoner was restrained while being transported to a local hospital." *Id.* § 511.0105(b)(4). If the definition of "prisoner" is geographically limited to the county jail facility, then a prisoner who is transported to a hospital can no longer be a prisoner for purposes of the statute, rendering subsection 511.0105(b)(4) inoperable. This cuts against the presumption that the Legislature "intend[s] to create a cohesive statutory framework that gives effect to every provision." *Miracle Auto., Inc. v. Geico Cnty. Mut. Ins. Co.*, 696 S.W.3d 713, 717 (Tex. App.—San Antonio 2024, no

pet.); *accord* SCALIA & GARNER, *supra*, at 174 ("If possible, every word and every provision is to be given effect . . . .").

Reading the definitional phrase "in a county jail" as a general status of imprisonment, on the other hand, ameliorates this problem. It is well settled that "the Legislature intends an entire statute to be effective," *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001), and "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory," SCALIA & GARNER, *supra*, at 180. Interpreting "in a county jail" within the definition of "prisoner" as a conceptual status of imprisonment, while construing "in a county jail" in subsection 511.021(a) as imposing a locational condition on a "prisoner," brings harmony to the two provisions: Confinement in a county jail generally governs a prisoner's status—regardless of his or her immediate location—and subsection 511.021(a) requires an independent investigation into prisoner deaths only when occurring *in* one of those county jails.

This construction is likewise supported by the Legislature's demonstrated capacity to predicate investigations on deaths in custody rather than those literally occurring in a county jail. Chapter 501 of the Government Code requires reporting "[i]f an inmate dies while *in the custody* of the department," TEX. GOV'T CODE § 501.055(a) (emphasis added), and the Legislature defined "inmate in the custody of the department" as "a convicted felon who: (1) is confined in a secure correctional facility operated by or under contract with the department; or (2) has been admitted for treatment into a hospital while remaining in the custody of the department," *id.* § 501.055(e). Had the Legislature intended a similarly broad construction of subsection 511.021(a), of course, it would have used similarly broad language. We must presume "different meanings were intended" where "the [L]egislature uses certain language in one part of the statute and different language in another." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) (quoting *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995)).

The title of section 511.021 further underscores its geographical focus: "Independent Investigation of Death *Occurring in* County Jail." TEX. GOV'T CODE § 511.021 (emphasis added). Though not independently dispositive, "[t]he title and headings are permissible indicators of meaning." SCALIA & GARNER, *supra*, at 221; *accord* TEX. GOV'T CODE § 311.023(7) ("In construing a statute, . . . a court may consider among other matters the[] . . . title (caption), preamble, and emergency provision."); *see also, e.g.*, *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 138 (Tex. 2017) (per curiam) (considering a rule's title to aid in interpreting the rule). The title of section 511.021 thus serves to confirm what is otherwise made clear by statutory context: The phrase "in a county jail" speaks to a prisoner's location, and the independent investigation requirement in subsection 511.021(a) is triggered only when a prisoner dies *in* a county jail facility.[4]

---

[4] Given our conclusion, the scenarios to which you refer in your Request Letter—i.e., a prisoner who dies while being treated in the hospital for cancer and a prisoner who dies from a heart attack while on work release—would not require the Commission to appoint an outside law enforcement agency to investigate the death under the statute, as neither death occurred in a county jail. *See* Request Letter at 3–4. Moreover, nothing in subsection 511.021(a) suggests that a prisoner's cause of death has bearing on the investigation requirement.

**This construction of subsection 511.021(c) does not mean that the Commission's rule is facially invalid**

It is important to note that the foregoing does not mean the Commission's Rule—requiring an independent investigation into all deaths that occur in custody, 37 TEX. ADMIN. CODE § 269.1(5)—is necessarily invalid. In fact, the Commission agrees that the requirements of subsection 511.021(a) are limited to prisoner deaths occurring inside of a county jail but suggests that provision is merely a "baseline requirement" related to investigations into county jail deaths. Commission Brief at 5. The Commission therefore suggests that the "true" issue before us is its "authority to promulgate" the Rule rather than "the scope of [s]ection 511.021." *Id.* at 1. While this is not the question we were asked, of course, the point merits general comment on agency rulemaking in order to highlight the limited scope of this opinion.

State agencies, like the Commission, have "only those powers that the Texas Legislature has expressly conferred upon [them] and those implied powers that are reasonably necessary to carry out [their] statutory duties." *Tex. Med. Ass'n*, 511 S.W.3d at 33. It follows that the Commission's exercise of rulemaking authority must be "in harmony with the general objectives of the act involved" as discerned from the "plain text of the statutes that grant or limit the agency's authority." *Id.* (citations omitted). But there is no such harmony if a rule: "(1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Id.*

Notably, the Commission did not rely on subsection 511.021(c) during notice-and-comment rulemaking; it instead invoked two *other* provisions of the Government Code: (1) subsection 511.0085(a)(8), 42 Tex. Reg. 6630, 6631 (2017), which directs the Commission to "develop a comprehensive set of risk factors to use in assessing the overall risk level" of jails within its jurisdiction—including "the number and nature of inmate deaths at the jail" and "the results of the investigations of those deaths," TEX. GOV'T CODE § 511.0085(a)(8); and (2) subsection 511.0085(b)(2), 42 Tex. Reg. 6630, 6631 (2017), which requires the Commission to "regularly monitor[] the overall risk level of each jail," Act of May 31, 2009, 81st Leg., R.S., ch. 1215, § 8, 2009 Tex. Gen. Laws 3882, 3886 (amended 2021) (current version at TEX. GOV'T CODE § 511.0085(c)(2)). These provisions therefore constitute the Commission's "restatement of . . . [authority] under which the rule [was] adopted" and certified as "a valid exercise of the agency's legal authority."[5] TEX. GOV'T CODE § 2001.033(a)(2)–(3).

Neither does the limited scope of subsection 511.021(c) cut against the authority invoked during notice-and-comment rulemaking. This subsection plainly imposes a regulatory floor—mandating independent-investigation rules for deaths that occur *inside* county jails, *supra* pp. 2–5—within the Commission's general obligation to "adopt reasonable rules and procedures establishing minimum standards for the . . . operation of county jails," TEX. GOV'T CODE

---

[5] This obviates the need to consider whether the Commission can rely on authority that was not articulated during notice-and-comment rulemaking process. *Cf.* Commission Brief at 2.

§ 511.009(a)(1), as well as "for the custody, care, and treatment of prisoners," *id.* § 511.009(a)(2).[6] As such, there can be no claim that subsection 511.021(c) constitutes the Commission's *only* authority to promulgate death-adjacent investigation rules. Our interpretation of subsection 511.021(c) therefore has no bearing on whether the Rule, which was adopted under different authorities, is facially valid. That question is beyond the scope of your request, and we decline to *sua sponte* expand the scope of this opinion.

---

[6] Subsection 511.009 was recently amended but is identical in relevant part. *See* Act of May 20, 2025, 89th Leg., R.S., ch. 299, § 3, 2025 Tex. Sess. Law Serv. 762, 763–64 (codified at TEX. GOV'T CODE § 511.009(a)).

## S U M M A R Y

The phrase "death of a prisoner in a county jail" in Government Code subsection 511.021(a) requires appointment of an independent law enforcement agency to investigate a prisoner death that occurred in the county jail itself. However, this does not mean the Commission lacks statutory authority to promulgate a rule requiring independent investigation of prisoner deaths while in custody.

Very truly yours,

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

ALLISON FREED
Assistant Attorney General, Opinion Committee