

KEN PAXTON

ATTORNEY GENERAL OF TEXAS

March 2, 2026

The Honorable Bob Hall
Chair, Senate Committee on Administration
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

  **Opinion No. KP-0519**

  Re: Regarding the legality of activities of election inspectors and poll watchers
(RQ-0632-KP)

Dear Senator Hall:

  You explain that your office has received reports that demonstrate uncertainty around the Texas Election Code, and you request clarification from our office "to ensure uniform application of the law across the State of Texas and to guide election officials in complying with their legal obligations."[1] In particular, you ask (1) whether, as a matter of law, state inspectors are prohibited from taking photographs or videos while observing election activities, and (2) whether, as a matter of law, poll watchers are prohibited from observing the counting of mail-in ballots and other activities related to mail-in ballots. *Id.* We, of course, agree that the uniform application of the law across the State is of paramount importance, and we address each question below.

  **State inspectors are not prohibited from taking photographs or videos while observing election activities.**

  Under the Election Code, the Secretary of State may appoint "state inspectors," TEX. ELEC. CODE § 34.001(a)–(b), who "are responsible to the secretary . . . and subject to the secretary's discretion," *id.* § 34.001(d). You ask whether, as a matter of law, these inspectors are prohibited from taking photographs or videos while observing election activities. Request Letter at 1. The answer is "no." The Election Code does generally prohibit the "mechanical or electronic . . . recording [of] images or sound within 100 feet of a voting station," and even prohibits the use of "a wireless communication device within a room in which voting is taking place." TEX. ELEC. CODE § 61.014(a)–(b). But the Code is clear that these prohibitions "do[] not apply to[] . . . an

---

[1] Letter from Hon. Bob Hall, Chairman, S. Comm. on Admin., to Hon. Ken Paxton, Tex. Att'y Gen. at 1 (rec'd Feb. 23, 2026), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2026/RQ0632KP.pdf ("Request Letter").

election officer in conducting the officer's official duties."[2] *Id.* § 61.014(d)(1). As such, the general prohibition on recording images or sound does not apply to these inspectors.[3]

Indeed, state inspectors are empowered to "take reasonable steps to *obtain evidence* of the manner in which a function or activity is being performed" at a variety of election locations. *Id.* § 34.002(a) (emphasis added); *see also id.* § 34.002(c) (providing that an inspector "shall report to the secretary of state any violation of law that the inspector observes"). The Election Code does not define "evidence," so we apply the term's ordinary meaning, looking first to the term's dictionary definition. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). "Evidence" means "[t]hat which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue," including "[a]ll the means" by which "the truth . . . is established." BLACK'S LAW DICTIONARY 287 (5th ed. 1983). The term is broad and unqualified, imposing no limitation concerning photographs or videos.

"Evidence" also encompasses "[t]he means sanctioned by law" in a judicial proceeding "to ascertain[] . . . the truth*." Id.* The Texas Rules of Evidence generally "apply to proceedings in Texas courts,"[4] TEX. R. EVID. 101(b), and those rules contemplate photographs and recordings as evidence, *see generally id.* 1001–1009 (pertaining to "Contents of Writings, Recordings, and Photographs"); *cf.*, *e.g.*, *Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Photographs are admissible if they are relevant to any issue in a case."); *Kroger Co. v. Milanes*, 474 S.W.3d 321, 341−42 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding videos were admissible). In sum, under any ordinary legal definition of "evidence," photographs and videos are plainly included. There is thus little question that appointed inspectors are not prohibited as a matter of law from recording images or video while observing election activities.[5]

**Poll watchers are not prohibited, as a matter of law, from observing the counting of mail-in ballots or other activities related to mail-in ballots.**

You also ask whether Texas law prohibits poll watchers from observing activities related to mail-in ballots. Request Letter at 1. As a matter of law, there is no such prohibition. The Legislature set out the duties of poll watchers in Chapter 33 of the Election Code in order "to preserve the integrity of the ballot box in accordance with Section 4, Article VI" of the "Texas

---

[2] This prohibition likewise does not apply to "the use of election equipment necessary for the conduct of the election" or to "a person who is employed at the location in which a polling place is located while the person is acting in the course of the person's employment." TEX. ELEC. CODE § 61.014(d)(2)–(3).

[3] This conclusion is confirmed by official guidance from the Texas Secretary of State, which provides that policies prohibiting the use of "devices that are capable of recording sound or images . . . in the central counting station" cannot be applied to "state inspector[s] . . . in the performance of their duties under the Texas Election Code." TEX. SEC. OF STATE, CENTRAL COUNTING STATION HANDBOOK 42 (Sept. 15, 2025), https://www.sos.state.tx.us/elections/forms/central-counting-station-handbook.pdf.

[4] The Election Code also incorporates the Texas Rules of Evidence for certain contested enforcement matters. TEX. ELEC. CODE §§ 241.013, 243.010.

[5] We note that an inspector may not "observe the preparation of the ballot of a voter not being assisted by an election officer." *Id.* § 34.002(b).

Constitution." TEX. ELEC. CODE § 33.0015; *see also* TEX. CONST. art. VI, § 4. The Code defines a "watcher" as "a person appointed . . . to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure." TEX. ELEC. CODE § 33.001. The appointing authority must issue a certificate of appointment, *id.* § 33.006(a), which must "identify the election and the precinct polling place or other location at which the appointee is to serve," *id.* § 33.006(b)(4).

The Election Code makes clear that "a watcher is entitled to observe *any activity* conducted at the location at which the watcher is serving." *Id.* § 33.056(a) (emphasis added). The Code also ensures that "a watcher may not be denied free movement where election activity is occurring within the location at which the watcher is serving."[6] *Id.* § 33.056(e). Thus, the handling, processing, or counting of mail-in ballots would fall under "any activity," *see id.*, if those activities take place at a location to which the watcher is appointed.

The primary settings in which mail-in ballots are handled, processed,[7] or counted are early voting ballot boards, *see, e.g., id.* §§ 87.001, .021(2), .0241(a), .041(b), signature verification committees,[8] *see, e.g., id.* § 87.027(a)–(j), and central counting stations,[9] *see, e.g., id.* §§ 87.101, .103. Importantly, the Code specifically contemplates watchers being present and observing "any activity," *id.* § 33.056, at each of these locations, *see id.* § 33.054(a) (providing that a watcher "may be present *at any time* the [early voting ballot board] or [signature verification committee] is *processing or counting* ballots" (emphases added)); *id.* § 33.055(a) (providing that a watcher may be present at a central counting station "at any time the station is open for the purpose of processing or preparing to process election results"). Watchers are also statutorily authorized to observe the "delivery of election records" from each of these locations—again, all where mail-in

---

[6] Note that the Code ensures watchers' free movement only in the areas where *election activity* is actually occurring. TEX. ELEC. CODE § 33.056(e). That being the case, election officials may cordon off areas in which no election activity is taking place. Likewise, watchers cannot "interfere with the orderly conduct of an election" nor "obstruct the conduct of the election," *id.* § 33.0015, and they are only entitled "to sit or stand near enough to see and hear the election officers conducting the observed activity, except as otherwise prohibited" by Chapter 33 of the Code, *id.* § 33.056(a).

[7] The processing of ballots is done by the early voting ballot board, *id.* § 87.00, meaning the "board "make[s] its determination whether to accept" the "early voting ballots voted by mail," *id.* § 87.0241(a). To make that determination, the ballot board evaluates, among other things: whether the voter is registered to vote; whether the signature on the ballot application and carrier envelope certificate belongs to the voter; and whether the "ballot application states a legal ground for early voting by mail." *Id.* § 87.041(b).

[8] When a signature verification committee is appointed by the early voting clerk, it functions as a separate early step in the processing of mail-in ballots. The early voting clerk delivers jacket envelopes containing the mail-in ballots to the committee, rather than to the early voting ballot board. *Id.* § 87.027(h). The committee then compares "the signature on each carrier envelope certificate" with the voter's ballot application "to determine whether the signatures are those of the voter." *Id.* § 87.027(i). The committee then separates ballots with correct signatures from ballots with faulty signatures and "deliver[s] the sorted materials to the early voting ballot board" for further processing. *Id.*

[9] Although mail-in ballots are often counted by the early voting ballot board, *id.* § 87.0241, in some cases ballots may instead be counted at a central counting station by automatic tabulating equipment, *id.* § 87.101.

ballots are handled and counted.[10] *Id.* § 33.060. In sum, the Legislature would not have singled out these settings in which mail-in ballots are handled, processed, transported, and counted if the Legislature did not intend for watchers to actually observe the "processing or counting," *id.* § 33.054(a), of mail-in ballots at these locations.

The Code also provides watchers with specific grants of authority to observe certain unique activities relating to mail-in ballots, *see id.* §§ 86.008(d), .011(i), 87.0271(e), .0411(e), but these more specific grants do not limit the broader grant of authority to observe "any activity" in settings where mail-in ballots are processed and counted. *See id.* § 33.056; *see also In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) ("To the extent possible, we will construe . . . different provisions in a way that harmonizes rather than conflicts."); *Tex. Dep't of Criminal Just. v. Canales*, 715 S.W.3d 810, 818 (Tex. App.—Austin 2024, pet. denied) ("Statutes are presumed to be enacted . . . by the Legislature with knowledge of the existing law and subject to it unless the contrary is clearly indicated."). Each of these specific grants of authority deals with situations in which election officials must interact directly with voters. *See id.* §§ 86.008(d), .011(i), 87.0271(e), .0411(e). For example, early voting ballot board members and signature verification committee members may in some circumstances contact voters—including by email or phone—to provide voters an opportunity to correct defects in mail-in ballots. *See id.* §§ 87.0271, .0411. The early voting clerk has the same authority to contact voters when there are defects in an application to vote by mail, *see id.* § 86.008, or defects in a ballot, *see id.* § 86.011(d). And in the former case, the early voting clerk may even "deliver in person to the voter" another application. *Id.* § 86.008. In each situation, the Code makes clear that watchers may observe these interactions. *Id.* §§ 86.008(d), .011(i), 87.0271(e), .0411(e).

It is not surprising that the Legislature clarified that watchers have permission to observe these specific interactions, given that the Code generally prohibits watchers from interacting with voters and even limits watchers' interactions with election officers. *Id.* § 33.058(a)(2)–(3) (providing that watchers cannot "converse with a voter" or "communicate in any manner with a voter regarding the election"); *id.* § 33.058(a)(1) (providing that watchers cannot "converse with an election officer regarding the election, except to call attention to an irregularity or violation of law"). Watchers are also generally not allowed to be present in a voting station with a voter, but watchers *can* observe in this private setting when a voter is being assisted by an election officer.[11] *Id.* § 33.057(a)–(b). Together, these provisions demonstrate that watchers are generally permitted to observe the conduct of election officers, even when doing so puts watchers in situations involving direct interaction between election officers and voters. These provisions also demonstrate that the Legislature knows how to limit the activities of watchers, and it has done so with specificity—dedicating an entire section of the Code exclusively to this task. *See id.* § 33.058 ("Restrictions on Watcher's Activities"). And "[w]hen interpreting statutes, we presume the Legislature chose the statute's language with care, purposefully choosing each word, while

---

[10] While section 33.060 refers to an early voting ballot board and not specifically to a signature verification committee, *id.* § 33.060, section 33.0016 clarifies that references in Chapter 33 "to an early voting ballot board includes a signature verification committee," *id.* § 33.0016.

[11] As another example, if a voter is physically unable to enter the polling place, an election officer must bring the voter a ballot at the entrance or curb, TEX. ELEC. CODE § 64.009(a), and the Code clarifies that watchers are entitled to observe this interaction as well, *id.* § 64.009(e).

purposefully omitting words not chosen." *In re Commitment of Bluitt*, 605 S.W.3d 199, 203–04 (Tex. 2020) (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). Here, the Legislature's purposeful restrictions on watchers' activities, paired with silence on restrictions related to mail-in ballots, speaks volumes.

In sum, the Legislature would not have empowered watchers with authority "to observe any activity conducted at the location at which the watcher is serving," *see* § 33.056(a), and empowered watchers to be present in the very settings in which mail-in ballots are processed and counted, *see* §§ 33.054, .055, only to silently imply a consequential limitation on that authority that can be found nowhere in the text of the Code. Thus, watchers are not prohibited, as a matter of law, from observing activities related to mail-in ballots when those activities occur at a watcher's appointed location. *See id.* § 33.056.

<u>**S U M M A R Y**</u>

State inspectors are not prohibited, as a matter of law, from taking photographs and videos while observing election activities. Neither are poll watchers prohibited, as a matter of law, from observing election activities related to mail-in ballots.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

MICHAEL C. COTTON
Acting Chair, Opinion Committee